UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN DOE,

                              Plaintiff,

          v.

STATE UNIVERSITY OF NEW YORK
PURCHASE COLLEGE,

                              Defendant.

---

No. 21-CV-8417 (KMK)

OPINION & ORDER

Appearances:

Diana Fabi, Esq.
Michael DiBenedetto, Esq.
Imran Ansari, Esq.
Aidala, Bertuna & Kamins, PC
New York, NY
*Counsel for Plaintiff*

Mark Klein, Esq.
Mark Ferguson, Esq.
Office of the New York Attorney General
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

    John Doe ("Plaintiff"), proceeding pseudonymously, brings this Action against the State

University of New York ("SUNY") Purchase College ("SUNY Purchase" or "Defendant"),

alleging that Defendant violated his rights under Title IX of the Education Amendments of 1972,

20 U.S.C. §§ 1681, et seq. ("Title IX") and New York state law while Plaintiff was a student at

SUNY Purchase via an allegedly biased investigation into and erroneous adjudication of a

complaint of sexual assault made against Plaintiff by a female classmate.  (*See generally* Compl.

(Dkt. No. 1).)[1]  Plaintiff also alleges that Defendant failed to protect Plaintiff from harassment by other students upon his return to campus after the complaint was adjudicated, which led to Plaintiff's withdrawal from the school.  (*See id.*)  Before the Court is Defendant's Motion To Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (*See* Not. of Mot. (Dkt. No. 23).)  For the following reasons, Defendant's Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from the Complaint and are assumed to be true for purposes of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

### 1.  Events of September 19, 2017

Plaintiff began attending SUNY Purchase in the Fall of 2016 as a freshman in SUNY Purchase's Bachelor of Fine Arts program for acting.  (*See* Compl. ¶¶ 68–69.)  On Wednesday,

---

[1] Defendant notes that "[a]s a subdivision of SUNY, Purchase College is not a legally cognizable entity separate from SUNY," and therefore that "SUNY is the sole proper defendant." (Def.'s Mem. of Law in Supp. of Mot. 1 n.1 (citing N.Y. EDUC. LAW §§ 351, 352) (Dkt. No. 25).)  Plaintiff neither accepts nor refutes this argument.  (*See* Pl.'s Mem. of Law in Opp'n to Mot. 1 n.2 (Dkt. No. 27).)

New York Education Law § 352 provides that "[t]he state university shall consist of," inter alia, "the designated colleges of arts and sciences at Brockport, Buffalo, Cortland, Fredonia, Geneseo, New Paltz, Old Westbury, Oneonta, Oswego, Plattsburgh, Potsdam[,] and Purchase," N.Y. EDUC. LAW § 352(3); thus, SUNY Purchase is simply a constituent campus of the SUNY system and not a separate entity.  Courts have interpreted SUNY's constituent campuses as such, for example, for Eleventh Amendment purposes.  *See, e.g.*, *Barsoumian v. Williams*, 29 F. Supp. 3d 303, 311 (W.D.N.Y. 2014) ("For Eleventh Amendment purposes, S.U.N.Y. is an integral part of the government of the State of New York and when it or one of its constituent campuses is sued the State is the real party."); *see also Daniel v. Am. Bd. of Emergency Medicine*, 988 F. Supp. 127, 173 (W.D.N.Y. 1997) (explaining that "[t]he Stony Brook University Hospital is not separately incorporated from SUNY, rather, SUNY manages, administers, and oversees the University Hospital as a unit of the University at Stony Brook"). The Court thus agrees that SUNY is the proper defendant here and will proceed as such.

April 19, 2017, a group of five SUNY Purchase students gathered in Plaintiff's dormitory suite in the Crossroads Residence Hall following a theater rehearsal to celebrate one of the student's birthdays and to watch a movie. (*See id.* ¶¶ 9–11.) Two of those students were Plaintiff and Jane Roe ("Roe"), a female SUNY Purchase student and then a friend of Plaintiff's.[2] (*See id.* ¶¶ 7, 10.) Plaintiff alleges that both he and Roe consumed a portion of a 1.5-liter bottle of red wine that was shared among all five students, and that Roe was affectionate with Plaintiff throughout the evening. (*See id.* ¶¶ 11–12.) After the students finished watching the movie, Plaintiff and certain others left to attend another party; Roe remained in the dormitory suite with one of Plaintiff's suitemates and waited for Plaintiff to return. (*See id.* ¶ 13.) Approximately three hours later, Plaintiff alleges that he returned to the suite and Roe asked to spend the night with Plaintiff. (*See id.* ¶¶ 14–17.)

Plaintiff and Roe walked into Plaintiff's bedroom, where Plaintiff's roommate was already sleeping, and Roe changed into a pair of Plaintiff's pajamas before the two got into Plaintiff's bed. (*See id.* ¶¶ 17–19.) Plaintiff alleges that at this point, he and Roe began to mutually kiss one another and engage in foreplay, and Roe assisted Plaintiff in removing the pajama pants that she was wearing. (*See id.* ¶¶ 20–21.) Plaintiff alleges that before he and Roe engaged in sexual intercourse, Roe asked him to wear a condom and he did. (*See id.* ¶ 22.) The two then engaged in sexual intercourse, after which Plaintiff briefly left the room to smoke a cigarette. (*See id.* ¶¶ 23–24.) Plaintiff alleges that when he returned to the room, Roe stayed in his bed and the two mutually kissed again. (*See id.* ¶ 24.) At approximately 1:30am, Roe borrowed a shirt from Plaintiff to go to the bathroom, left Plaintiff's room, and did not return. (*See id.* ¶ 25.)

---

[2] "Jane Roe" is also a pseudonym.

Plaintiff sent Roe a text message after she left his room, but Roe did not respond.  (*See id.* ¶ 26.)  The following day, Plaintiff and Roe saw one another at a theater rehearsal and Plaintiff alleges that Roe behaved awkwardly.  (*See id.* ¶ 27.)  The day after that, Roe sent Plaintiff a text message and asked Plaintiff if she could retrieve her belongings from Plaintiff's room.  (*See id.* ¶ 28.)  On April 23, 2017, Roe went to the SUNY Purchase campus police and reported that Plaintiff had sexually assaulted her.  (*See id.* ¶¶ 30, 71.)  When Roe made her initial report to campus police, she stated that she was unable to consent to any sexual acts because she was having an anxiety attack.  (*See id.* ¶ 74.)

### 2.  Investigation and Adjudication of Jane Roe's Complaint

On April 23, 2017, Roe's report was referred to SUNY Purchase's Title IX Coordinator/Title IX Investigator Ricardo Espinales ("Espinales").  (*See id.* ¶ 76.)  On April 25, 2017, Plaintiff was verbally informed that he was under a "no contact order" by SUNY Purchase's Director of Community Standards Melissa Glazer ("Glazer"), but alleges at that time he was not advised why the order was issued or that Roe had reported a sexual assault.  (*See id.* ¶ 77.)  Plaintiff alleges that on April 26, 2017, Glazer told Plaintiff that she had received a report of sexual assault but was not aware of any further details, and that it was Plaintiff's responsibility to remove himself from locations where Roe was present.  (*See id.* ¶ 78.)

Espinales conducted his investigation of Roe's allegations between May 2 and June 1, 2017.  (*See id.* ¶ 79.)  Espinales interviewed Roe on May 2, 2017, which was followed by at least one other interview on May 15, 2017 and email communications with Roe.  (*See id.* ¶¶ 80–83.)  Espinales interviewed Plaintiff on May 9, 2017; however, Plaintiff alleges that Espinales did not provide Plaintiff with a "disciplinary specification of charges" letter as required by SUNY Purchase's Code of Conduct prior to the interview.  (*See id.* ¶ 84.)  Plaintiff alleges that it was during this interview that he first learned the details of Roe's allegations against him.  (*See id.*

¶ 85.)  Espinales also interviewed three additional students over the course of his investigation of Roe's allegations, but did not interview Plaintiff's roommate, who was in the room during Plaintiff and Roe's sexual encounter.  (*See id.* ¶¶ 87–88.)

On June 28, 2017, Plaintiff was charged with violating three separate provisions of SUNY Purchase's Code of Conduct.  (*See id.* ¶ 90.)  Two of those provisions concerned underage consumption of alcohol; the third, C.8, concerned sexual assault.  (*See id.*)  Plaintiff alleges that he did not receive SUNY Purchase's "[c]harging [n]otice" until July 10, 2017, and that the notice failed to either "detail the factual allegations in support of the charges" or "put [Plaintiff] on notice that he would be subject to sanctions after any suspension from the school had been served."  (*Id.* ¶¶ 91–92.)  Plaintiff ultimately admitted and accepted responsibility for the code violations concerning underage alcohol consumption but denied his charged violation of C.8.  (*See id.* ¶¶ 93, 95.)

On July 27, 2017, a three-member administrative hearing board was convened to adjudicate Plaintiff's charged violation of C.8.  (*See id.* ¶ 97.)  Roe testified at the hearing and claimed during her testimony that she was incapable of consenting to sexual activity due to her consumption of alcohol, Adderall, and Lexapro.  (*See id.* ¶ 101.)  Additional witnesses also testified.  (*See id.* ¶¶ 110–12.)  On July 31, 2017, the hearing board issued a decision in which it found Roe's testimony to be "conflicting and unreliable as it pertained to her inability to consent," but that Plaintiff "did not obtain affirmative consent to place his hands under Roe's shirt, to conduct foreplay on Roe, or to engage in sexual intercourse with Roe."  (*Id.* ¶¶ 114, 116 (alterations and quotation marks omitted).)  The board imposed the following sanctions: (1) suspension and "persona non grata" status through August 1, 2018; (2) residence suspension with "residence area persona non grata" status for one academic semester upon Plaintiff's return

to campus; (3) disciplinary probation for one calendar year upon Plaintiff's return to campus; and (4) a wellness/substance education class to be completed prior to Plaintiff's return to campus. (*See id.* ¶ 35.)

Plaintiff appealed the decision on August 3, 2017; his appeal was denied on August 14, 2017. (*See id.* ¶¶ 119, 120.)

### 3. Plaintiff's Return to Campus and Withdrawal

As a result of the adjudication, Plaintiff was barred from returning to campus for the 2017–18 academic year, (*see id.* ¶ 40); Plaintiff returned to SUNY Purchase in September 2018 as a sophomore, (*see id.* ¶ 45). Because Plaintiff was not permitted to live in SUNY Purchase's residential dormitories, he lived alone in off-campus housing miles from campus and was required to take a bus to and from campus to attend classes. (*See id.* ¶ 46.) Plaintiff was also barred from entering SUNY Purchase's residential dormitories, holding office in any student group or organization, holding certain employment positions on campus, and participating in study-abroad programs. (*See id.* ¶¶ 47–48.)

Plaintiff alleges that as a result of the adjudication, Plaintiff was ostracized and harassed by his fellow students; harassment which SUNY Purchase did nothing to prevent or ameliorate even after being informed of the situation by Plaintiff's father. (*See id.* ¶¶ 50–54.) On one occasion, one of Plaintiff's classmates posted a picture of Plaintiff on social media and labeled Plaintiff a "rapist." (*Id.* ¶ 53.) Plaintiff alleges that he lodged a formal complaint with SUNY Purchase concerning this post but that there were no consequences. (*See id.* ¶ 54.)

Plaintiff alleges that because he was "[d]istraught and unable to endure the isolation, harassment, and shunning, that he experienced both inside and outside the classroom, and because [SUNY Purchase] chose not to protect [Plaintiff] or to do anything to ameliorate the hostile environment [and] harassment to which [Plaintiff] was daily subjected, [Plaintiff]

withdrew from SUNY Purchase on October 8, 2018." (*Id. ¶* 56.) SUNY Purchase refused to refund or waive any of Plaintiff's admission fees for the Fall 2018 semester. (*See id.* ¶ 57.)

### 4. Article 78 Proceedings

On November 2, 2017, Plaintiff filed a verified petition pursuant to Article 78 in New York Supreme Court for the County of Albany ("Albany County Court") to appeal SUNY Purchase's adjudication of Roe's complaint and the sanctions imposed and to seek both reinstatement and damages (the "Article 78 Proceedings"). (*See id.* ¶ 41.) On January 26, 2018, Plaintiff and SUNY Purchase signed a joint stipulation to change venue to the New York Supreme Court for the County of Westchester ("Westchester County Court") and to extend SUNY Purchase's time to answer Plaintiff's petition. (*See* Decl. of Mark E. Klein in Supp. of Mot. ("Klein Decl.") (Dkt. No. 24) Ex. B (Dkt. No. 24-2).)[3] In the stipulation, SUNY Purchase stipulated that "it shall not file a motion to dismiss on jurisdictional, statute of limitations[,] or res judicata grounds, and that upon the filing of an answer, this matter shall be transferred to the Appellate Division, Second Department." (*Id.* at 2.) The stipulation was entered by Justice Michael Mackey on January 26, 2018. (*See id.*)

---

[3] Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the pleadings themselves," because "[t]o go beyond the allegations in the Complaint would convert to the Rule 12(b)(6) motion into one for summary judgment pursuant to [Rule] 56." *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002). Nevertheless, "the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment." *Id.*; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (similar). "Courts may take judicial notice of public documents and matters of public record," *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018), including "document[s] filed in another court[,] not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings," *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quotation marks omitted). The Parties' stipulation was filed in Albany County Court, and therefore, the Court may and does take judicial notice of it.

On February 2, 2018, the proceedings were transferred to the Westchester County Court from the Albany County Court, (*see* Compl. ¶ 43), and on March 20, 2018, the Westchester County Court transferred the proceedings to the New York Supreme Court, Appellate Division for the Second Department ("Second Department"), (*see id.* ¶ 44).  On April 16, 2021, the Second Department issued a decision in which the court unanimously ruled that SUNY Purchase's determination that Plaintiff violated C.8 was not supported by substantial evidence. (*See id.* ¶ 60.)  The Second Department therefore granted Plaintiff's Article 78 petition, vacated the sanctions imposed on Plaintiff by SUNY Purchase's adjudication, dismissed Plaintiff's charged violation of C.8, and directed SUNY Purchase to expunge all references to SUNY Purchase's finding that Plaintiff violated C.8 from Plaintiff's academic record.  (*See id.*)  The Second Department did not, however, address Plaintiff's claims for damages.  (*See id.* ¶ 61; *see also* Decl. of Diana Fabi, Esq. in Opp'n to Mot. ("Fabi Decl.") (Dkt. No. 26) Ex. A ("2d Dep't Decision") (Dkt. No. 26-1).)[4]

B.  Procedural History

After filing a notice of intention to file a claim, (*see* Dkt. No. 1-1), Plaintiff filed his Complaint on October 12, 2021, (*see* Compl.).  The Action was initially assigned to Judge Valerie Caproni, (*see* Dkt. (entry for Oct. 13, 2021)), but it was reassigned to this Court on January 24, 2022, (*see* Dkt. (entry for Jan. 24, 2022)).

On October 26, 2021, Plaintiff filed a Motion for a Protective Order and to Proceed Under a Pseudonym, (*see* Dkt. No. 7), which Judge Caproni entered on October 27, 2021, (*see* Dkt. No. 8).  On January 21, 2022, Judge Caproni held an initial pretrial conference in which she set a briefing schedule for Defendant's then-anticipated motion to dismiss and stayed discovery

---

[4] The Court takes judicial notice of the Second Department's decision on Plaintiff's Article 78 petition for the reasons explained in note 3, *supra*.

until the Court's ruling on the motion.  (*See* Dkt. (minute entry for Jan. 21, 2022); *see also* Dkt. No. 22.)

As explained, on January 24, 2022, the Action was reassigned to this Court, (*see* Dkt. (entry for Jan. 24, 2022)), and on February 2, 2022, Defendant filed its Motion To Dismiss, (*see* Not. of Mot.; Klein Decl.; Def.'s Mem. of Law in Supp. of Mot. ("Def.'s Mem.") (Dkt. No. 25)). Plaintiff filed his Opposition on March 4, 2022.  (*See* Fabi Decl.; Pl.'s Mem. of Law in Opp'n to Mot. ("Pl.'s Mem.") (Dkt. No. 27).)  Defendant filed its Reply on March 18, 2022.  (*See* Reply Decl. of Mark E. Klein in Supp. of Mot. (Dkt. No. 28); Def.'s Reply Mem. of Law in Supp. of Mot. ("Def.'s Reply Mem.") (Dkt. No. 29).)

## II.  Discussion

### A.  Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'" *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)).

#### 1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint."  *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quotation marks omitted).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (quotation marks omitted)).

The Second Circuit has explained that a challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1) may be facial or fact-based.  *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden," *id.* (citing (*Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)), and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue," *id.* (quoting *Selevan v. New York Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)).  In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor.  *Id.* at 57.  However, where a Rule 12(b)(1) motion is fact-based and a defendant proffers evidence outside the pleadings, a plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial.  *See Katz v. Donna Karan Co.*, 872 F.3d 114, 119 (2d Cir. 2017).  "If the extrinsic evidence presented by the defendant is material and controverted," the Court must make findings of fact "in aid of its decision as to standing."  *See Carter*, 822 F.3d at 57.

## 2.  Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and quotation

marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting FED. R. CIV. P. 8(a)(2))); *id.* at 678–79. ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegation contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw all reasonable inferences in the plaintiff's favor," *Div. 1181*, 9 F.4th at 94 (citation omitted).  Additionally, "when ruling on a Rule 12(b)(6) motion to dismiss," district courts are directed to confine their consideration to "the complaint in its entirety, . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Bellin*, 6 F.4th at 473 (quotation marks omitted); *see also Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (same).

### B.  Analysis

Plaintiff brings eight causes of action against Defendant based on the conduct outlined above: (1) erroneous outcome and selective enforcement under Title IX, (*see* Compl. ¶¶ 143–57); (2) deliberate indifference under Title IX, (*see id.* ¶¶ 158–60); (3) hostile environment under Title IX, (*see id.* ¶¶ 161–62); (4) retaliation under Title IX, (*see id.* ¶ 163); (5) violation of the due process clause of the New York State Constitution, N.Y. CONST. art. I, § 6, (*see id.* ¶¶ 164–72); (6) breach of express contract under New York law, (*see id.* ¶¶ 173–82); (7) breach of express or implied contract established at common law "to ensure that the proceedings against [Plaintiff] were conducted in good faith and with basic fairness" under New York law, (*id.* ¶¶ 183–87); and (8) promissory estoppel and reliance under New York law, (*see id.* ¶¶ 188–95). Plaintiff seeks both declaratory relief and damages. (*See id.* at 37–39.) Defendant argues that all of Plaintiff's Title IX claims must be dismissed as untimely, (*see* Def.'s Mem. 4–12), and all of Plaintiff's state law claims must be dismissed as barred by the Eleventh Amendment, (*see id.* at 12–13).

The Court addresses these arguments to the extent necessary to decide the instant Motion.

### 1.  Timeliness of Title IX Claims

Defendant first seeks to dismiss Plaintiff's Title IX claims on timeliness grounds. (*See* Def.'s Mem. 4–12.) As a preliminary matter, the Court notes that "the law is clear that where the dates in a complaint show that an action is barred by a statute of limitations, a motion to dismiss based on the statute of limitations is properly treated as one under Rule 12(b)(6) rather than Rule 12(b)(1)." *Cangemi v. United States*, 13 F.4th 115, 134 (2d Cir. 2021) (alteration and quotation marks omitted); *see also Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) ("Generally, the lapse of a limitations period is an affirmative defense that a defendant must plead and prove. Nevertheless, a defendant may raise an affirmative defense in a pre-answer

Rule 12(b)(6) motion if the defense appears on the face of the complaint." (alteration, quotation marks, and citations omitted)); *Evancho v. Key Lincoln Mercury, Inc.*, No. 03-CV-1128, 2005 WL 8167265, at *1 (D. Conn. Apr. 26, 2005) (explaining that "Rule 12(b)(6) provides the most appropriate legal basis for a motion to dismiss on statute of limitations grounds, because expiration of the statute of limitations presents an affirmative defense"). Defendant has brought the instant Motion pursuant to both Rules 12(b)(1) and 12(b)(6), (*see* Not. of Mot.), though Defendant is not clear which portions of its Motion are brought pursuant to which rule, (*see generally* Def.'s Mem.). The Court therefore makes clear that the Court considers Defendant's motion to dismiss based on timeliness grounds pursuant to Rule 12(b)(6).

"Title IX does not contain a statute of limitations," *Curto v. Edmondson*, 392 F.3d 502, 504 (2d Cir. 2004), and the Second Circuit has made clear that "the four-year federal catch-all statute of limitations in 28 U.S.C. § 1658(a) is inapplicable," *id.*; *see also Purcell v. N.Y. Inst. of Tech.-Coll. of Osteopathic Med.*, 931 F.3d 59, 62 (2d Cir. 2019) ("Neither Title IX nor the [Americans with Disabilities Act] includes an express statute of limitations, and the four-year federal catch-all statute of limitations does not apply to either."). As the Supreme Court has explained, where a federal statute does not "expressly suppl[y] a limitations period," courts "generally 'borrow' the most closely analogous state limitations period." *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 414 (2005) (collecting cases). The most analogous state limitations period for Title IX claims brought in New York state is New York's three-year limitations period for personal injury claims. *See Curto*, 392 F.3d at 504 (agreeing with sister circuits that "Title IX claims are most closely analogous to personal injury actions" and borrowing New York's three-year limitations period for personal injury

actions); *accord Purcell*, 931 F.3d at 63; *see also* N.Y. C.P.L.R. 214(5) ("The following actions must be commenced within three years: an action to recover damages for personal injury.").

However, "[i]n a federal question case," such as this, "when a federal court determines the limitations period by applying an analogous state statute of limitations, the court nevertheless looks to federal common law to determine the time at which the plaintiff's federal claim accrues." *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007). "The standard accrual rule holds that a claim accrues 'when the plaintiff has a complete and present cause of action'; i.e.[,] when the cause of action 'comes into existence.'" *Doe v. Nat'l Ramah Comm'n, Inc.*, No. 16-CV-6869, 2018 WL 4284324, at *6 (S.D.N.Y. Sept. 7, 2018) (italics, footnote, and citation omitted) (quoting *Twersky v. Yeshiva Univ.*, 579 F. App'x 7, 9 (2d Cir. 2014)); *see also Shalto v. SFL Pizza Corp.*, No. 19-CV-1687, 2020 WL 3577335, at *2 (E.D.N.Y. June 30, 2020) ("The general rule is that a federal claim accrues once 'the plaintiff knows or has reason to know of that injury which is the basis of the action.'" (quoting *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003))). "The knowledge required is minimal; the plaintiff need only have 'knowledge of the injury's existence and knowledge of its cause or the person or entity that inflicted it.'" *Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 333 (E.D.N.Y. 2012) (quoting *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998)).

Plaintiff does not dispute the applicable statute of limitations or the accrual rule. (*See* Def.'s Mem. 4–5; Pl.'s Mem. 10.) Nor does Plaintiff appear to dispute the fact that Plaintiff's claims as to the adjudication of Roe's allegations accrued at the very latest on November 2, 2017, when Plaintiff commenced the Article 78 proceedings, and that Plaintiff's claims as to his treatment upon returning to campus accrued at the very latest on October 8, 2018, when Plaintiff withdrew from SUNY Purchase. (*See* Def.'s Mem. 5–6; Pl.'s Mem. 10–15.) As such, Plaintiff

does not appear to dispute that without the operation of a waiver, tolling, or some other mechanism, the statute of limitations on Plaintiff's Title IX claims would have expired on November 2, 2020 and October 8, 2021, respectively—before Plaintiff initiated this Action on October 12, 2021. (*See id.*) Rather, the instant dispute as to the timeliness of Plaintiff's Title IX claims concerns: (1) whether the Parties' stipulation in the Article 78 proceedings operates as a waiver of Defendant's statute of limitations defense; and (2) whether Governor Cuomo's COVID-19 executive orders operated to toll Plaintiff's Title IX claims as to his treatment upon returning to campus, which, in turn, makes Plaintiff's Title IX claims as to the adjudication of Roe's allegations timely as part of a continuing violation. (*See* Def.'s Mem. 8–12; Pl.'s Mem. 10–15; Def.'s Reply Mem. 2–9.) The Court addresses each argument, in turn.

### a. The Stipulation

The Court agrees with Defendant that the Parties' stipulation in the Article 78 Proceedings does not operate as a waiver of Defendant's statute of limitations defense in this Action. "A stipulation is a contract between parties," and therefore, "[i]t is subject to the general principles governing the construction of a contract." *Neuman v. Blue Cross/Blue Shield of Greater N.Y. (In re Neuman)*, 55 B.R. 702, 705 (S.D.N.Y. 1985) (collecting cases); *see also BCM Dev., LLC v. Oprandy*, 490 F. App'x 409, 409 (2d Cir. 2013) (summary order) ("Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake[,] or accident, will a party be relieved from the consequences of a stipulation made during litigation." (citation omitted)); *Hirsch v. Qingdao Orien Comm. Equip. Co.*, No. 12-CV-952, 2015 WL 1014352, at *7 (E.D.N.Y. Mar. 6, 2015) ("Stipulations and orders are binding agreements, that are enforceable just as contracts are. . . . That the stipulation became effective only upon judicial approval does not lessen this conclusion." (alteration and citation omitted)). "When interpreting a contract, [courts'] 'primary objective . . . . is to give effect to the intent of the parties as

revealed by the language of their agreement.'" *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co., N.A.*, 773 F.3d 110, 113–14 (2d Cir. 2014) (second alteration in original) (quoting *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 157 (2d Cir. 2000)). "The words and phrases in a contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *Id.* at 114 (quoting *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir. 2012)); *see also Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005) ("Contracts must be read as a whole, and if possible, courts must interpret them to effect the general purpose of the contract.").[5]

Here, the purpose of the stipulation was unequivocally "to change venue in *this matter* to Supreme Court, Westchester County," and in exchange for Plaintiff's agreement to extend SUNY Purchase's time to answer Plaintiff's petition, SUNY Purchase stipulated "that it shall not file a motion to dismiss on jurisdictional, statute of limitations[,] or res judicata grounds, and that upon the filing of the answer, *this matter* shall be transferred to the Appellate Division, Second Department." (Klein Decl. Ex. B (emphases added).) The plain meaning of the stipulation makes clear that SUNY Purchase's waiver of a statute of limitations defense was limited only to "this matter"—the Article 78 proceedings—and not any future litigation in federal court. *See Spruill-Boone v. Summit Sch. Inc.*, No. 04-CV-5568, 2006 WL 1085004, at *6 (E.D.N.Y. Apr. 24, 2006) (finding that installment agreement signed to resolve investigation by the Department of Labor in which the defendant "waived the statute of limitations defense 'in order

---

[5] Given that the stipulation in question was made during litigation before the New York Supreme Court, the Court applies New York law in interpreting its terms.

to resolve *this* matter'" applied only to the investigation itself and not to a subsequent lawsuit against the same defendant based on the same conduct (emphasis in original)).

Plaintiff's argument to the contrary is unpersuasive.  Plaintiff argues that "[a]ll three waivers contemplate other litigation," noting that "[r]es judicata, in particular[,] necessarily contemplates . . . Plaintiff's right to pursue other litigation avenues." (Pl.'s Mem. 11.)  While Plaintiff is of course correct on general principles, what Plaintiff leaves out is that the language of the stipulation precisely tracks CPLR 7804, which governs Article 78 proceedings and provides that "[w]here [the] issue [of substantial evidence] is raised, the court shall first dispose of such other objections as could as could terminate the proceeding, including but not limited to *lack of jurisdiction, statute of limitations[,] and res judicata*, without reaching the substantial evidence issue." N.Y. C.P.L.R. 7804(g) (emphasis added).  In reading the stipulation and interpreting it "to effect the general purpose of the contract," *Postlewaite*, 411 F.3d at 67—as the Court must—the Court comes to the most apparent conclusion that this language was included in the stipulation to prevent any further delay in the Article 78 Proceedings and as consideration for Plaintiff allowing SUNY Purchase an extension of time to respond to Plaintiff's petition.

Accordingly, the Court declines to find that the Parties' stipulation in the Article 78 Proceedings constitutes a waiver of Defendant's statute of limitations defense.

### b.  Governor Cuomo's Executive Orders

However, the Court agrees with Plaintiff that Governor Cuomo's executive orders do toll the statute of limitations on Plaintiff's Title IX claims.  On March 20, 2020, then-Governor Cuomo issued Executive Order 202.8, which tolled "any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state, including but not limited to . . . the civil practice law and rules." N.Y. Exec. Order No. 202.8.  This was followed by additional

executive orders that extended this tolling period to November 3, 2020, for a total of 228 days. *See* N.Y. Exec. Order No. 202.67.  (*See also* Def.'s Mem. 9; Pl.'s Mem. 13–14.)  Defendant argues that this Court should decline to find that these executive orders tolled the limitations period on Title IX claims because no other federal or state court has yet weighed in on the issue, and "absent such authority, including a ruling from the New York Court of Appeals, 'federal courts have good reason to think twice before wading into important and difficult state-law issues that the state's own courts have yet to explore.'"  (*See* Def.'s Mem. 8–9 (quoting *Lopez-Motherway v. City of Long Beach*, No. 20-CV-5652, 2021 WL 965158, at *9 (E.D.N.Y. Mar. 15, 2021)).)  While Defendant is correct that no other court has yet addressed this issue, the Court finds that this issue is not so "difficult" as to preclude this Court's consideration of it, because it requires only an analysis of basic tolling principles.

As explained above, "Title IX does not contain a statute of limitations, and courts therefore apply the most appropriate state statute of limitations.  That application carries with it the borrowing of the state's coordinate tolling rules, at least where such rules are not inconsistent with the letter and purpose of relevant provisions of federal law." *Twersky v. Yeshiva Univ.*, 112 F. Supp. 3d 173, 180 n.4 (S.D.N.Y. 2015) (quotation marks omitted), *aff'd*, 637 F. App'x 48 (2d Cir. 2016); *see also Zimmerman*, 888 F. Supp. 2d at 332 ("Title IX claims are subject to a three-year statute of limitations borrowed from state law. . . . The borrowing of a state-law statute of limitations carries with it the borrowing of the state's 'coordinate tolling rules.'" (quoting *Bd. of Regents v. Tomanio*, 446 U.S. 478, 484 (1980))).  And, as also explained above, courts have found that the most analogous state limitations period for Title IX claims brought in New York is the three-year statute of limitations for personal injury claims brought pursuant to CPLR 214. *See supra* II.B.1.  Therefore, the tolling rules which apply to CPLR 214's limitations period also

apply to Title IX claims brought in New York.  Because Executive Order 202.8 specifically tolls the limitations period for "the civil practice and rules," N.Y. Exec. Order 202.8, the Court finds that Executive Order 202.8 tolled the limitations period for Title IX claims brought in New York.

It is also worth noting that while no other federal court has yet decided this issue, the Court's rationale is consistent with Judge Dearie's reasoning in *Bonilla v. City of New York*, in which Judge Dearie found Executive Order 202.8 to toll the statute of limitations for § 1983 claims.  No. 20-CV-1704, 2020 WL 6637214 (E.D.N.Y. Nov. 12, 2020).  In *Bonilla*, Judge Dearie explained that because "[i]n a [§] 1983 action, a federal court in New York is to apply the three-year statute of limitations period applicable to state personal injury actions pursuant to [CPLR] 214," and "because the Supreme Court wanted [§] 1983 actions to be subject to state tolling rules," Executive Order 202.8 operates to toll the statute of limitations period applicable to § 1983 claims.  *Id.* at *2–3 (quotation marks omitted).  The Court sees no reason not to follow the same logic here, particularly when federal courts borrow from the same New York state statute—CPLR 214—for both § 1983 and Title IX claims.

Accordingly, the Court finds that Executive Order 202.8 does toll the statute of limitations for Title IX claims.  But because Plaintiff's Title IX claims as to the adjudication of Roe's allegations accrued at the latest on November 2, 2017, *see supra* II.B.1., the operation of Executive Order 202.8's tolling only extends the limitations period on these claims to June 18, 2021, which is still four months before Plaintiff's initiated this Action.  Therefore, the only claims that are saved by the operation of Executive Order 202.8 are Plaintiff's Title IX claims based on his treatment upon his return to campus.[6]

---

[6] Critically, Plaintiff does not appear to dispute this.  (*See* Pl.'s Mem. 14.)

### c.  Application of Continuing Violation Doctrine

Finally, the Court agrees with Defendant that Plaintiff has failed to allege that Defendant's acts related to the adjudication of Roe's allegations and Defendant's acts related to Plaintiff's return to campus are part of a continuing violation.  "Under the continuing violation doctrine, a plaintiff may bring claims for discriminatory acts that would have been barred by the statute of limitations as long as an act contributing to that discrimination took place within the statutory time period." *Purcell*, 931 F.3d at 65 (alterations omitted) (quoting *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011)).  "Therefore, 'a continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the defendant to continue unremedied for so long as to amount to a discriminatory policy or practice.'" *Id.* (alteration omitted) (quoting *Cornell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994)).  Critically, "[t]he continuing violation doctrine . . . applies not to discrete unlawful acts, even where those discrete acts are part of a 'serial violation,' but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (alteration omitted) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002)); *see also Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997) ("A continuing violation is not established merely because an employee continues to feel the effects of a discriminatory act on the part of the employer."); *Chandrapaul v. City Univ. of N.Y.*, No. 14-CV-790, 2016 WL 1611468, at *14 (E.D.N.Y. Apr. 20, 2016) ("[T]he continuing violation exception is 'usually associated with a discriminatory policy, rather than with individual instances of discrimination.'" (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001))).

While it appears that the continuing violation doctrine can apply to Title IX claims, *see Purcell*, 931 F.3d at 65–66—and the Parties do not dispute that the doctrine could theoretically apply to Plaintiff's Title IX claims, (*see* Pl.'s Mem. 14–15; Def.'s Reply Mem. 6–9)—the doctrine "is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." *Weslowski v. Zugibe*, 14 F. Supp. 3d 295, 304 (S.D.N.Y. 2014) (citation omitted); *see also Joseph S. v. Hogan*, 561 F. Supp. 2d 280, 315 (E.D.N.Y. 2008) ("[T]he continuing violation rule is disfavored by courts in [the Second] [C]ircuit." (quotation marks omitted)).

Here, the Court finds that Defendant's acts related to the adjudication of Roe's allegations were discrete, and not sufficiently related to Defendant's acts related to Plaintiff's return to campus to constitute a continuing violation.  A review of the timeline alleged in the Complaint is instructive.  Plaintiff and Roe's sexual encounter took place on the evening of April 19, 2017.  *See supra* I.A.1.  On April 23, 2017, Roe made a report to SUNY Purchase campus police that Plaintiff had sexually assaulted her; this report was referred to Espinales on the same day.  *See supra* I.A.1.–I.A.2.  Espinales investigated Roe's allegations between May 2, 2017 and June 1, 2017, and on June 28, 2017, Plaintiff was charged with violating C.8, in addition to two other Code of Conduct provisions concerning the underage consumption of alcohol.  *See supra* I.A.2.  On June 27, 2017, a hearing was held on Plaintiff's charges, and on July 31, 2017, the hearing board found that Plaintiff violated C.8 and imposed sanctions.  *See supra id.*  As a result of the adjudication, Plaintiff did not return to campus for the 2017–18 academic year; he instead returned in September 2018.  *See supra* I.A.3.  By this point, news of Plaintiff's adjudication had spread, and Plaintiff alleges he was subject by harassment and

ostracization by his classmates, which SUNY Purchase did nothing to prevent or ameliorate. *See supra id.* Plaintiff withdrew from SUNY Purchase on October 8, 2018. *See supra id.*

These allegations clearly set forth two separate sets of acts: (1) the set of acts pertaining to the adjudication of Roe's allegations, in the Spring of 2017, and (2) the set of acts pertaining to Plaintiff's return to campus, in the Fall of 2018. While all of Defendant's alleged acts are broadly related as ultimately based on Roe's allegation that Plaintiff had sexually assaulted her, Plaintiff has failed to allege any manner of continuing violation. These two sets of acts "are separated by [over one] year[], during which period [Plaintiff] does not allege any discrimination by [SUNY Purchase]." *Purcell*, 931 F.3d at 65. Moreover, the set of acts pertaining to Plaintiff's return to campus, significantly, involved alleged conduct by many third parties— Plaintiff's classmates—who are not alleged to have been involved in the adjudication of Roe's allegations. *Cf. id.* ("The lack of overlap between alleged harassers also points against finding a continuing violation."). At bottom, while Plaintiff may have "continue[d] to feel the effects" of what Plaintiff claims were discriminatory acts (in the form of SUNY Purchase's adjudication of Roe's allegations) at the time that Plaintiff returned to campus, this is not sufficient to allege a continuing violation. *Lightfoot*, 110 F.3d at 907.[7]

Accordingly, the Court finds that the continuing violation doctrine does not apply to Plaintiff's Title IX claims and thus that Plaintiff's Title IX claims pertaining to the adjudication of Roe's allegations are untimely.

---

[7] To the extent Plaintiff suggests that a court may not rule on whether the continuing violation doctrine applies on a motion to dismiss, (*see* Pl.'s Mem. 15), the Court disagrees. While Plaintiff is correct that questions of fact concerning the applicability of the continuing violation doctrine could preclude a court from ruling on the issue on a motion to dismiss, *see, e.g.*, *Drees v. County of Suffolk*, No. 06-CV-3298, 2007 WL 1875623, at *8–9 (E.D.N.Y. June 27, 2007), courts routinely find that the continuing violation doctrine does not apply via a motion to dismiss, *see, e.g.*, *Purcell*, 931 F.3d at 65–66; *Gonzalez*, 802 F.3d at 221–22.

### 2. Eleventh Amendment Immunity

Defendant also seeks to dismiss Plaintiff's state law claims as barred by the Eleventh Amendment. (*See* Def.'s Mem. 12–13.)  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  And, longstanding Supreme Court precedent instructs that the Eleventh Amendment applies equally to suits brought against a state, state agencies, and state employees in their official capacities.  *See, e.g.*, *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("Although by its terms the [Eleventh] Amendment applies only to suits against a State by citizens of another State, our cases have extended the Amendment's applicability to suits by citizens against their own States." (collecting cases)); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself." (citation omitted)); *Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 684 (1982) ("A suit generally may not be maintained directly against the State itself, or against an agency or department of the State, unless the State has waived its sovereign immunity.").  The Supreme Court has also instructed that this principle of Eleventh Amendment immunity "applies as well to state-law claims brought into federal court under pendent jurisdiction."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984).  Thus, "as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment."  *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration and quotation marks omitted).

SUNY is a state agency, and therefore, is subject to Eleventh Amendment protection. *See Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990) ("For Eleventh Amendment purposes, SUNY is an integral part of the government of the State of New York and when it is sued the State is the real party." (alteration and quotation marks omitted)); *accord Sealy v. State Univ. of N.Y. at Stony Brook*, 834 F. App'x 611, 613 (2d Cir. 2020) (summary order) (same). While "Congress expressly abrogated the states' sovereign immunity for Title IX claims in the Rehabilitation Act Amendments of 1986," *Vega v. State Univ. of N.Y. Bd. of Trs.*, 67 F. Supp. 2d 324, 340 (S.D.N.Y. 1999); *see also Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 284 (1998) (referring to "Congress' abrogation of the States' Eleventh Amendment immunity under Title IX" (citing 42 U.S.C. § 2000d-7)), New York has not prospectively waived its immunity for claims brought pursuant to the New York State Constitution or other state law claims such as breach of contract or promissory estoppel, *see Parmlee v. Officer of Att'y Gen.*, No. 21-CV-1292, 2022 WL 1462247, at *3 (D. Conn. May 9, 2022) ("The jurisdictional bar of the Eleventh Amendment applies to state claims against state agencies, including claims for breach of contract like the one here."); *Maione v. Zucker*, No. 18-CV-7452, 2022 WL 784483, at *6 (S.D.N.Y. Mar. 15, 2022) (finding claims brought pursuant to the New York State Constitution against state officials to be barred by the Eleventh Amendment); *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 244 (E.D.N.Y. 2015) (finding the plaintiff's "New York State common law claims against [the City University of New York]" to be "barred by the Eleventh Amendment"); *Cajuste v. Lechworth Dev. Disabilities Serv.*, No. 03-CV-161, 2005 WL 22863, at *3 (S.D.N.Y. Jan. 5, 2005) ("New York has consented to suit for breach of contract, but not in federal court; instead, jurisdiction is vested in the state Court of Claims.").

However, "a State's sovereign immunity is 'a personal privilege which it may waive at [its] pleasure.'" *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) (quoting *Clark v. Barnard*, 108 U.S. 436, 447 (1883)); *see also Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998) ("The Eleventh Amendment, however, does not automatically destroy original jurisdiction.  Rather, the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so.  The State can waive the defense.").  In determining whether a state has waived its sovereign immunity in a particular action, "the Supreme Court has frequently instructed that a state will not be deemed to have waived its sovereign immunity unless the waiver is 'express' and 'unequivocal.'" *Doe v. Pataki*, 481 F.3d 69, 78 (2d Cir. 2007) (collecting cases); *see also Edelman v. Jordan*, 415 U.S. 651, 673 (1974) ("In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.'" (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909))).

Plaintiff argues that SUNY Purchase's stipulation in the Article 78 Proceedings constitutes such an "express" or "unequivocal" waiver, (*see* Pl.'s Mem. 16), but the Court does not agree.  Again, the relevant paragraph from the stipulation states: "[SUNY Purchase] further stipulates that it shall not file a motion to dismiss on jurisdictional, statute of limitations[,] or res judicata grounds, and that upon the filing of the answer, *this matter* shall be transferred to the Appellate Division, Second Department."  (Klein Decl. Ex. B (emphasis added).)  Thus, by its terms, SUNY Purchase's agreement to "not file a motion to dismiss on jurisdictional . . . grounds" applies only to the Article 78 Proceedings, which is only logical, as this stipulation was signed over three years before the instant Action was commenced.  *See supra*

I.A.4., I.B.  The Court also must point out that the instant Action was not front of mind at the time the Parties agreed to the stipulation; Plaintiff makes clear in the Complaint that he sought the relief he currently seeks via the Article 78 Proceedings and only brought the instant Action because the Second Department declined to grant him this relief.  (*See* Compl. ¶¶ 3–4, 6 (explaining that "the [Second Department] did not address [Plaintiff's] claims . . . for damages arising from SUNY Purchase's disciplinary decision . . . [n]either did the Court address [Plaintiff's] claim for restitution and/or damages for all losses or damages sustained as a result of Defendant's unlawful action. . . . Accordingly, [Plaintiff] brings this action for damages . . . ." (alteration and quotation marks omitted)).)  Put simply, the Court refuses to find that Defendant expressly and unequivocally waived its constitutional protection under the Eleventh Amendment in an unforeseeable future litigation in federal court via an agreement not to file a motion to dismiss on jurisdictional grounds in an Article 78 proceeding in New York state court.  *Cf. Pejovic v. State Univ. of N.Y. at Albany*, No. 17-CV-1092, 2018 WL 3614169, at *6 (N.D.N.Y. July 26, 2018) (finding that SUNY Albany did not waive its Eleventh Amendment immunity via a 1994 stipulation entered by the New York Supreme Court directing SUNY Albany to comply with Title IX in athletics because "[t]he language of the 1994 [s]tipulation does not explicitly state SUNY Albany intended to waive its immunity, nor does the language by overwhelming implication leave no room for any other reasonable construction"); *Hamzik v. Off. of People with Developmental Disabilities*, 859 F. Supp. 2d 265, 276 (N.D.N.Y. 2012) (declining to find that a New York State agency "effectively waived its Eleventh Amendment immunity by entering into a stipulation in a completely unrelated action in the Southern District of New York in 2002" where "the stipulation . . . never discussed the state's sovereign immunity" and "there is nothing in the stipulation that constitutes an unequivocal abrogation of immunity or consent to future

suit"); *Wang v. Paterson*, No. 07-CV-2032, 2008 WL 5272736, at *2–3 (S.D.N.Y. Dec. 18, 2008) (finding that provision of stipulated settlement agreement in which the plaintiffs agreed to release "the State of New York and/or its agencies from any and all claims, liabilities, causes of action, or defenses that any party . . . could have asserted" did not constitute a waiver of sovereign immunity in future action because "[t]he statement in no way suggests that, had [the] [p]laintiffs asserted the instant claims in the earlier action, [the] [d]efendants would have declined to avail themselves of their Eleventh Amendment shield"). Particularly when the most logical interpretation of this contractual language is to track CPLR 7804, as the Court explained above. *See supra* II.B.1.a.

Accordingly, Plaintiff's state law claims are dismissed.

### III.  Conclusion

For the foregoing reasons, Defendant's Motion is granted in part and denied in part. The Clerk of Court is directed to terminate the pending motion. (*See* Dkt. No. 23.) Plaintiff's Title IX claims concerning SUNY Purchase's adjudication of Roe's allegations are dismissed with prejudice as barred by the statute of limitations; Plaintiff's state law claims are dismissed with prejudice as barred by the Eleventh Amendment. Plaintiff's Title IX claims concerning his treatment upon his return to campus survive.

The Court will hold a telephonic status conference on September 16, 2022 at 11AM. SO ORDERED.

Dated:   July 27, 2022
         White Plains, New York

_____
         KENNETH M. KARAS
         United States District Judge

27