UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DOE,

               Plaintiff,

    v.

STATE UNIVERSITY OF NEW YORK
PURCHASE COLLEGE,

             Defendant.

No. 21-CV-8417 (KMK)

OPINION & ORDER

Appearances:

Diana Fabi, Esq.
Imran H. Ansari, Esq.
Aidala, Bertuna, & Kamins, PC
New York, NY
*Counsel for Plaintiff*

Michael DiBenedetto, Esq.
Aidala, Bertuna, & Kamins, PC
Staten Island, NY
*Counsel for Plaintiff*

Mark Elliot Klein, Esq.
Mark Robert Ferguson, Esq.
Office of the New York Attorney General
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

       John Doe ("Plaintiff"), proceeding pseudonymously, brings this Action against the State

University of New York ("SUNY") Purchase College ("SUNY Purchase" or "Defendant"),

alleging that Defendant violated his rights under Title IX of the Education Amendments of 1972,

20 U.S.C. §§ 1681, et seq. ("Title IX") in connection with allegations of sexual assault made

against him by a female classmate. (*See generally* Compl. (Dkt. No. 1).) Plaintiff claims that

SUNY Purchase failed to protect him from a hostile peer-to-peer environment and that SUNY

Purchase allowed that environment to persist in retaliation for his complaints of discrimination.

(*See* Compl. ¶¶ 158–63.)  Before the Court is Defendant's Motion for Summary Judgment.  (*See*

Not. of Mot. (Dkt. No. 77).)  For the following reasons, Defendant's Motion is granted.

## I.  Background

### A.  Factual Background

The following facts, all undisputed, are taken from the Parties' Local Civil Rule 56.1

statements and admissible evidence submitted in connection with their papers.  (*See* Rule 56.1

Statement ("Def's 56.1") (Dkt. No. 79); Resp. to Def's Statement of Undisputed Facts ("Pl's

56.1") (Dkt. No. 86).)[1]  In addition, these facts are recounted "in the light most favorable to"

Plaintiff, the non-movant.  *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021).

_____

[1] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  The nonmoving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party . . . ."  Local Civ. R. 56.1(b).  If the party opposing summary judgment fails to "specifically controvert[]" the moving party's statement of material facts by "[e]ach numbered paragraph," then the moving party's facts "will be deemed to be admitted for purposes of the motion."  *Id*. 56.1(c).  Further, "[e]ach statement by the movant or opponent . . . , including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible."  *Id*. 56.1(d).  Courts thus may not accept conclusory denials in a Rule 56.1 counterstatement unsupported by admissible evidence.  *See Mae v. Quickway Ests. LLC*, No. 22-CV-3048, 2023 WL 6162927, at *1 n.2 (S.D.N.Y. Sept. 21, 2023); *see also Ethelberth v. Choice Sec. Co.,* 91 F. Supp. 3d 339, 354–55 (E.D.N.Y. 2015) (granting summary judgment where the nonmoving party "relie[d] solely on his own general statements" rather than admissible evidence in disputing the moving party's statement of material facts).

Here, Plaintiff either admits SUNY Purchase's statements or generally "[d]enies the truth of the allegations contained [therein]."  (*See, e.g*., Pl's 56.1 ¶¶ 5, 23, 26, 27.)  As to those general denials, while SUNY Purchase cites admissible evidence throughout its statement, Plaintiff does not offer any of his own in response.  (*See generally id.*)  As such, he has failed to "specifically controvert[]" SUNY Purchase's statements.  *See* Loc. Civ. R. 56.1(c); *see also Kelly v. City of New York*, 576 F. App'x. 22, 24 n.2 (2d Cir. 2014) (summary order) (concluding that there was no error in the district court's "deem[ing of the] plaintiffs' Local Rule 56.1 Statement admitted where [the] defendants' Rule 56.1 responses were general denials and admissions that did not

1.  Jane Roe's Allegations & SUNY Purchase's Adjudication

During the 2016–17 school year, Plaintiff was enrolled in SUNY Purchase's Conservatory for Theater Arts with a cohort of approximately 20 other students.  (*See* Decl. of Jennifer Shingelo in Supp. of Mot. ("Shingelo Decl.") ¶ 2 (Dkt. No. 82).)  In the spring 2017 semester, Jane Roe—another member of Plaintiff's cohort—accused him of sexual assault. (Decl. of Melissa Glazer in Supp. of Mot. ("Glazer Decl.") ¶ 12 (Dkt. No. 81).)

Pursuant to SUNY's Title IX policies, SUNY Purchase conducted an investigation and, ultimately, an adjudication (the "Adjudication") regarding those accusations.  (*See id*. ¶¶ 7; *see generally id*., Ex. B (Dkt. No. 81-2).)  The Adjudication proceeded before a committee of three SUNY Purchase employees charged with hearing evidence, determining if Plaintiff violated school policy, and issuing appropriate sanctions.  (*See* Glazer Decl. ¶ 7; *see also* Decl. of Mark R. Ferguson, Esq., in Supp. of Mot. ("Ferguson Decl."), Ex. A ("Article 78 Petition") ¶ 65 (Dkt. No. 80-1).)

After a hearing, the committee found that Plaintiff violated the Student Code of Conduct and issued a variety of sanctions.  (Glazer Decl. ¶ 12.)  Those sanctions included:

- A suspension until the beginning of the fall 2018 semester;

- Residence area "Persona Non Grata" status until the end of the fall 2018 semester, meaning Plaintiff could not "at any time or for any purpose" be present in residence areas, including dining halls; and,

---

meet the substance of [the] plaintiffs['] allegations"); *Maersk, Inc. v. Neewra, Inc.*, 687 F. Supp. 2d 300, 313 (S.D.N.Y. 2009) ("Paragraphs in [the plaintiff's] Rule 56.1 Statement that are not 'specifically controverted by a correspondingly numbered paragraph' in the [defendants'] Rule 56.1 Counterstatement are deemed admitted for purposes of [the plaintiff's] summary judgment motion." (emphasis omitted) (quoting Loc. Civ. R. 56.1(c))).  The facts set forth in SUNY Purchase's 56.1 statement are therefore "deemed admitted to the extent that they are supported by the evidence in the record."  *Laufer Grp. Int'l, Ltd. v. Sonder Distrib. USA, LLC*, No. 22-CV-3313, 2023 WL 6317949, at *2 (S.D.N.Y. Sept. 28, 2023).

- Disciplinary probation with a requirement that Plaintiff complete a wellness education class.

(*Id*. ¶¶ 11–12.) Plaintiff appealed the determination and sanctions via an internal appeal process, but on April 14, 2017, an appeal board upheld the result of the Adjudication and Plaintiff's sanctions went into effect, including his year-long suspension. (*Id.* ¶ 13.)

### 2. Plaintiff's Return to Campus

In the spring 2018 semester, SUNY Purchase conducted a Title IX training for faculty and students in the Conservatory of Theatre Arts in preparation for Plaintiff's post-suspension return to campus. (Def's 56.1 ¶ 24; Pl's 56.1 ¶ 24.) The training addressed what constituted discrimination and retaliation under Title IX, but SUNY Purchase did not share any information regarding Plaintiff. (*See* Decl. of Jerima Dewese in Supp. of Mot. ("Dewese Decl.") ¶ 6 (Dkt. No. 83).)

Following Plaintiff's suspension, he returned to campus at the end of August 2018. (Def's 56.1 ¶¶ 1, 11; Pl's 56.1 ¶¶ 1, 11.) On August 27, 2018, Plaintiff's father emailed Jennifer Shingelo, SUNY Purchase's Director of Academic Advising and Student Support, notifying her that information about Roe's accusations had been shared among Plaintiff's new cohort.[2] (*See* Shingelo Decl., Ex. A (Dkt. No. 82-1).) Plaintiff's father was concerned that Plaintiff would "be the odd man out" and that Plaintiff's cohort may have "an initial bias" based on hearing "one side of th[e] story." (*Id*.)

Shingelo responded referencing the preparatory Title IX training and offered to speak to Plaintiff about reintegrating into his classes. (*See id*.; Shingelo Decl. ¶ 4.) Additionally, at least one member of the program faculty proactively encouraged students to work with Plaintiff and

---

[2] Plaintiff returned to campus as a sophomore and was placed with a new group of students, as his prior cohort were juniors. (Decl. of Diana Fabi in Opp. to Mot. ("Fabi Decl."), Ex. 1 ("Pl's Dep") at 30:13–17 (Dkt. No. 84-1).)

explained that failure to do so could affect their grades. (*See* Decl. of Diana Fabi in Opp. to Mot. ("Fabi Decl."), Ex. 5 ("Gideon Dep.") at 36:18–22; 44:2–10 (Gideon testifying that he told cohort to "support [Plaintiff]" and that they were there to work) (Dkt. No. 84-5).)

Nevertheless, Plaintiff felt "shunned" and "ostracized" by his classmates. (*See, e.g.*, Fabi Decl., Ex. 1 ("Pl's Dep.") at 32–33 (Dkt. No. 84-1).) His first day back in class, Plaintiff observed his new cohort glare at him the second he stepped in the room. (*Id.* at 32:2–6, 51:2–7.) The students generally would not engage in conversations with Plaintiff, and when they did, his peers were short and dismissive. (*Id.* at 32:11–16.) One student, for example, would ignore Plaintiff and give him "shady looks" when the two crossed paths. (*Id.* at 76:17–22.) In his words, he felt "alone in a room full of people." (*Id.* at 33:2–3.)

That said, there were certain lines Plaintiff's cohort did not cross. Although they came off "outright . . . nasty," Plaintiff's peers never called him derogatory names. (*See id.* at 77:7– 14.) They also did not make Plaintiff feel physically threatened. (Def's 56.1 ¶ 13; Pl's 56.1 ¶ 13.) Additionally, the cohort—approximately half male and half female—did not shun male students generally. (Pl's Dep. at 74:20–75:5.)

Beyond dismissiveness, there was one instance where a classmate voiced her refusal to work with Plaintiff during a class exercise and left the room. (*Id.* at 82:15–20.) That student had to sit out the remainder of the class, (*id.* at 82:21–25), and Plaintiff briefly paired up with another student, (*id.* at 84:25–85:4). But Plaintiff explained that the incident was a "catalyst" leading him to consider withdrawing from school. (*Id.* at 165:20–23.)

Additionally, in mid-September 2018, a SUNY Purchase student, though not one in Plaintiff's cohort, sent a Snapchat with a picture of Plaintiff's profile on a dating app, with the caption: "Uuuuuuuh this dude raped a girl freshman year & the school only suspended him.

Watch out Purchase & warn ur friends." (*See* Dewese Decl., Ex. A (Dkt. No. 83-1).)[3]  Another

student showed Plaintiff the Snapchat, (*see* Pl's Dep. at 97:2–10), and Plaintiff complained to

Jerima Dewese, SUNY's then-Title IX Coordinator, via email and met with her in person, (*see*

Dewese Decl. ¶ 8).  He subsequently obtained a no-contact order between himself and the

student. (Glazer Decl. ¶ 16.)  A no contact order is "a formal administrative directive . . .

requiring parties to have no direct or indirect interaction," including written communication,

electronic communication, or contact through third parties.  (*Id*. ¶ 6.)

### 3.  Plaintiff's Complaints to SUNY Purchase

Plaintiff and his father brought some of these events and circumstances to the attention of

school officials and faculty.  Specifically, Plaintiff's father emailed Shingelo on September 24,

2018, stating "the retaliatory behavior of [Plaintiff's] current company on top of all that has

transpired is breaking him. . . . [ T]hey treat him like he is invisible [and] [o]ne student outright

refused to work with him in class [] on Friday."  (Shingelo Decl., Ex. B at 2 (Dkt. No. 82-2).)

In addition to reporting the Snapchat, Plaintiff had conversations with David Gideon and

Akil Davis—both faculty members—and Shingelo.  (Pl's Dep. at 68:3–6.)  He expressed

concerns that the environment he faced was not "suitable for anyone trying to . . . learn the craft

of acting," that it was "next to impossible to get [his] work done," and that he felt discriminated

against in "some form or way."  (*Id*. at 68:24–69:6, 69:23–25.)  Asked why he felt discriminated

against, Plaintiff responded that it was "a result of the fact that everyone knew about th[e]

allegations [of sexual assault] and about [him] having [been] sanctioned."  (*See, e.g*., *id*. at 66:9–

13.)

---

[3] Plaintiff testified that, because Snapchats only last for 24 hours, he did not know how widely the Snapchat was shared.  (*See* Pl's Dep. at 108:18–109:10.)

Plaintiff eventually decided enough was enough—that he was "through with it," (*id.* at 167:4–7)—and decided to withdraw from SUNY Purchase on October 8, 2018, (Glazer Decl. ¶ 17.)

### 4.  Article 78 Proceeding

On November 2, 2017, Plaintiff filed an Article 78 Petition in New York state court to appeal the result of the Adjudication and the sanctions imposed against him.  (*See* Article 78 Petition.)  Relevant here, Article 78 allows individuals to challenge state disciplinary determinations because they are "in violation of lawful procedure," "affected by an error of law," or involved an "abuse of discretion."  *See Whitfield v. City of New York*, 96 F.4th 504, 519 (2d Cir. 2024) (quoting C.P.L.R. § 7803(3)).

Plaintiff's Petition raised two legal challenges: (1) that the Adjudication was "invalid on due process grounds for being arbitrary and capricious" and "not supported by substantial evidence," and (2) that it failed to follow SUNY Purchase's own "rules [and] procedures." (Article 78 Petition ¶ 1.)  He sought both reinstatement and damages.  (*See id*.)

On April 16, 2021, a unanimous Appellate Division panel ruled that SUNY Purchase's determination was not supported by substantial evidence.  (Fabi Decl., Ex. 1 ("Article 78 Decision") 4 (Dkt. No. 26-1).)  It therefore granted Plaintiff's Article 78 Petition, vacated the sanctions imposed on Plaintiff, and directed SUNY Purchase to expunge all references to this matter from Plaintiff's academic record.  (*Id*. at 5.)  The Appellate Division did not address Plaintiff's claim for damages.  (*See generally id*.)

### B.  Procedural History

Plaintiff initially pled multiple theories of Title IX liability.  He claimed, among other things, that the Adjudication reached an erroneous result and imposed an unjustly severe penalty, that SUNY Purchase was indifferent to harassment by other students upon his return, and that its

indifference was in retaliation for his complaints of discrimination. (*See* Compl. ¶¶ 158–63.) On February 2, 2022, SUNY Purchase moved to dismiss the first set of claims—regarding the Adjudication—as untimely. (*See* Not. of Mot. (Dkt. No. 23).) On July 27, 2022, the Court granted that motion and held that all of Plaintiff's Title IX claims "pertaining to the adjudication of Roe's allegations" were time-barred. *Doe v. State Univ. of N.Y. Purchase Coll.*, 617 F. Supp. 3d 195, 210 (S.D.N.Y. 2022).

SUNY Purchase filed its Motion for Summary Judgment on Plaintiff's remaining claims on November 20, 2023. (*See* Not. of Mot.; Mem. of Law in Supp. of Mot. ("Def's Mem.") (Dkt. No. 78).) Plaintiff filed his Opposition on February 2, 2024. (Pl's Mem. of Law in Opp. ("Pl's Mem.") (Dkt. No. 85).) SUNY Purchase filed a Reply on March 8, 2024. (Def's Reply Mem. of Law ("Def's Reply") (Dkt. No. 87).)

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same) (quoting Fed. R. Civ. P. 56(a)). "In deciding whether to award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia*, 17 F.4th at 354; *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration adopted) (internal quotation marks and citation omitted); *see also U.S. Bank Nat'l Ass'n as Tr. for Reg. Holders of J.P. Morgan Chase Com. Mortg. Sec. Corp., Multifamily Mortg. Pass-Through Certificates, Series 2017-SB42 v. 160 Palisades Realty Partners LLC*, No. 20-CV-8089, 2022 WL 743928, at *3 (S.D.N.Y. Mar. 10, 2022) (same). Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)); *see also Jennifer Fung-Schwartz, D.P.M, LLC v. Cerner Corp.*, No. 17-CV-233, 2023 WL 6646385, at *3 (S.D.N.Y. Oct. 12, 2023) (same), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (internal quotation marks and citation omitted); *see also Kollias v. Univ. of Rochester*, No. 18-CV-6566, 2023 WL 5608868, at *4 (W.D.N.Y. Aug. 30, 2023) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading." (quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009))). Indeed, "[w]hile summary judgment must be granted with caution in . . . discrimination actions, . . . a plaintiff must prove more than conclusory allegations of

9

discrimination to defeat a motion for summary judgment." *Aspilaire v. Wyeth Pharms., Inc.*, 612 F. Supp. 2d 289, 302 (S.D.N.Y. 2009) (internal quotation marks and citation omitted); *see also Streichert v. Town of Chester*, No. 19-CV-7133, 2022 WL 4449305, at *4 (S.D.N.Y. Sept. 23, 2022) ("It is the law of this Circuit that summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact, and may be appropriate even in the fact-intensive context of discrimination cases." (alteration omitted) (quoting *Schiano v. Quality Payroll Sys., Inc*., 445 F.3d 597, 608 (2d Cir. 2006))).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Seward v. Antonini*, No. 20-CV-9251, 2023 WL 6387180, at *12 (S.D.N.Y. Sept. 29, 2023) (quoting *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014)). "At this stage, 'the role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried.'" *U.S. Sec. & Exch. Comm'n v. Amah*, No. 21-CV-6694, 2023 WL 6386956, at *8 (S.D.N.Y. Sept. 28, 2023) (alteration adopted) (quoting *Brod v. Omya*, 653 F.3d 156, 164 (2d Cir. 2011)). Therefore, "a court's goal should be 'to isolate and dispose of factually unsupported claims.'" *Id.* (quoting *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

When ruling on a motion for summary judgment, a district court should "consider only evidence that would be admissible at trial." *Latimer v. Annucci*, No. 21-CV-1275, 2023 WL 6795495, at *3 (S.D.N.Y. Oct. 13, 2023) (citing *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.,* 164 F.3d 736, 746 (2d Cir. 1998)). "Where a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'"

*Mozzochi v. Town of Glastonbury*, No. 21-CV-1159, 2023 WL 3303947, at *3 (D. Conn. May 8, 2023) (quoting Fed. R. Civ. P.56(c)(4)); *see also DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (same); *E. Fishkill Fire Dist. v. Ferrara Fire Apparatus, Inc.*, No. 20-CV-576, 2023 WL 6386821, at *11 (S.D.N.Y. Sept. 28, 2023) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ." (internal citation omitted)); *Baity*, 51 F. Supp. 3d at 419 (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (internal quotation marks and citation omitted)).

As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Martinez v. Pao's Cleaning, Inc.*, No. 16-CV-6939, 2018 WL 6303829, at *2 (E.D.N.Y. Dec. 3, 2018) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005)). However, although witness credibility is usually a question of fact for the jury, *Yu Zhang v. Sabrina USA Inc.*, No. 18-CV-12332, 2021 WL 1198932, at *3 (S.D.N.Y. Mar. 30, 2021), "[b]road, conclusory attacks on the credibility of a witness without more [are] insufficient to raise a genuine issue of material fact that would defeat a motion for summary judgment," *Sec. & Exch. Comm'n v. Airborne Wireless Network*, No. 21-CV-1772, 2023 WL 5938527, at *6 (S.D.N.Y. Sept. 12, 2023) (internal quotation marks and citation omitted); *see also Ezuma v. City Univ. of N.Y.*, 665 F. Supp. 2d 116, 128 (E.D.N.Y. 2009) ("If the moving party has made a properly supported motion for summary judgment, the plaintiff may not respond simply with general attacks upon the defendant's credibility." (alterations omitted) (internal quotation marks and citation omitted)). As such, "when opposing a motion for summary judgment, the non-moving party may not respond simply with general attacks upon the

declarant's credibility, but rather must identify affirmative evidence from which a jury could find that the non-moving party has carried its burden of proof." *Moritz v. Town of Warwick*, No. 15-CV-5424, 2017 WL 4785462, at *8 (S.D.N.Y. Oct. 19, 2017) (alterations adopted) (internal quotation marks and citation omitted); *see also Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 181 (E.D.N.Y. 2015) ("'Although credibility assessments are improper on a motion for summary judgment,' a court may be justified in dismissing a claim when the 'plaintiff's version of the events is in such discord with the record evidence as to be wholly fanciful.'" (quoting *Pulliam v. Lilly*, No. 07-CV-1243, 2010 WL 935383, at *5 (E.D.N.Y. Mar. 11, 2010))).

Relevant here, the Second Circuit has "repeatedly expressed the need for caution about granting summary judgment . . . in a discrimination case" especially where the merits "turn on a dispute as to [discriminatory] intent." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 258 (2d Cir. 2023) (quoting *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008)). Because discriminatory intent is "elusive" in nature, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015), "affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination," *Banks*, 81 F.4th at 259 (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997)).

B.  Analysis

"Title IX provides that 'no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.'" *Roe v. St. John's Univ.*, 91 F.4th 643, 652 (2d Cir. 2024) (alteration adopted) (quoting 20 U.S.C. § 1681(a)). The Parties make several arguments related to Plaintiff's Title IX claims, but at bottom, this case presents a simple question:  was a student, who claims he was harassed in connection with sexual

12

assault allegations, discriminated against "on the basis of sex"?  Under the undisputed

circumstances, the answer to that question is no.  SUNY Purchase therefore cannot be held liable

for indifference to that alleged harassment, or for retaliation in response to Plaintiff's complaints

regarding that harassment.

### 1.  Hostile Environment

SUNY Purchase first moves for summary judgement on Plaintiff's claims that he faced a

hostile environment.  (Def's Mem. 9–16.)

One of the many Title IX theories available to a student is that "he or she [has been]

subjected to a hostile [peer] environment that constitutes discrimination on the basis of sex."  *See*

*Roe*, 91 F.4th at 661 (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999)).  To

recover against an institution for student-on-student harassment, a plaintiff must show:

"(1) defendant is a Title IX funding recipient; (2) an appropriate person ha[d] actual knowledge

of the discrimination or harassment the plaintiff alleges occurred; (3) the funding recipient []

acted with deliberate indifference to known acts of harassment; and (4) the discrimination [was]

so severe, pervasive[,] and objectively offensive that it effectively bar[red] the victim's access to

an educational opportunity or benefit."  *Morin v. Fordham Univ.*, No. 21-CV-7909, 2022 WL

4586042, at *7 (S.D.N.Y. Sept. 28, 2022) (quoting *McGrath v. Dominican Coll. of Blauvelt*,

*N.Y.*, 672 F. Supp. 2d 477, 486–87 (S.D.N.Y. 2009)); *see also Doe v. Sacks*, No. 23-CV-1307, —

F. Supp. 3d —, 2024 WL 402945, at *8 (S.D.N.Y. Feb. 2, 2024) (similar); *cf. Papelino v. Albany*

*Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011) (explaining that "a Title IX

hostile education environment claim is governed by traditional Title VII 'hostile environment'

jurisprudence" (internal quotation marks omitted)).

The harassment underlying a Title IX hostile environment complaint "must also, of

course, be 'gender-oriented.'"  *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 363

(S.D.N.Y. 2016) (quoting *Davis*, 526 U.S. at 651). In the Title VII context—which is instructive

here—courts have long held that "harassment, even harassment between men and women" is not

"automatically discrimination because of sex merely because the words used have sexual content

or connotations." *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 80 (1998); *see also,*

*e.g.*, *Menaker v. Hofstra Univ*., 935 F.3d 20, 31 (2d Cir. 2019) ("We have[] . . . long interpreted

Title IX by looking to the [] caselaw interpreting Title VII[.]" (alteration adopted) (quotation

marks omitted). Instead, the plaintiff must show that hostile conduct occurred because of "[his]

membership in a protected class." *See Tassy v. Buttigieg*, 51 F.4th 521, 533 (2d Cir. 2022)

(alteration adopted) (quotation marks omitted); *see also Panchishak v. County of Rockland*,

No. 20-CV-10095, 2021 WL 4429840, at *4 (S.D.N.Y. Sept. 27, 2021) ("It is axiomatic that the

plaintiff . . . must show that the hostile conduct occurred because of a protected characteristic."

(alteration and quotation marks omitted omitted)); *Acosta v. City of New York*, No. 11-CV-856,

2012 WL 1506954, at *8 (S.D.N.Y. 2012) (dismissing hostile environment claim where there

were "no allegations that any animus subjective or objective stemmed from [the] plaintiff's

membership in a protected class" (quotation marks omitted)); *cf. Yusuf v. Vassar Coll*., 35 F.3d

709, 715 (2d Cir. 1994) ("Title IX bars the imposition of university discipline where gender is a

motivating factor in the decision to discipline.").

### a. Discrimination "On the Basis of Sex"

SUNY Purchase first argues that any harassment Plaintiff experienced was not sex-based.

(Def's Mem. 10–12.) It relies on two analogous cases, which guide the Court's inquiry.

The first case is *Nungesser*, where a Columbia student was accused of sexual misconduct,

later found "not responsible," but publicly labeled a "serial rapist." *Nungesser*, 169 F. Supp. 3d

at 359–62.[4]  Considering the student's Title IX hostile environment claim, Judge Woods held the "serial rapist" label, in addition to advocacy targeted at the student, did not constitute "gender-based discrimination." *Id.* at 364–67.  *Nungesser* began with the well-established proposition that Title IX's "on the basis of sex" language "refers to one's status, not to whether the underlying conduct was sexual in nature." *Id*. at 364; *see also Panchishak*, 2021 WL 4429840, at *5 (noting speech with "sexual content or connotations" is not automatically harassment on the basis of sex (citation omitted)); *Doe v. Columbia Coll. Chi.*, 299 F. Supp. 3d 939, 951 (N.D. Ill. 2017) ("The peer harassment forming the basis of a Title IX claim must . . . , of course, be gender-oriented." (quotation marks omitted)).  "The mere fact that [school] sexual harassment proceedings[, in which the plaintiff was accused,] ha[d] as their subject sexual behavior," therefore, did not "itself implicate sex discrimination[.]" *Nungesser*, 169 F. Supp. 3d at 364 (alteration and citation omitted).  Accordingly, insofar as comments about those proceedings were targeted at the student, it was "because of *his conduct* . . . not because of *his status* as a male." *Id.* at 365–66 (emphases in original); *see also Doe*, 299 F. Supp. 3d at 952 ("Doe's own allegations make clear that he was harassed because of his relationship with Roe and because of his status as a person accused of sexual assault, not because of his gender.").  And because the complaint otherwise lacked "typical[]" allegations of "peer harassment" like "sexual touching or the use of gendered slurs," it was not actionable under Title IX.  *See Nungesser*, 169 F. Supp. 3d at 366.

---

[4] *Nungesser* addressed what became a well-known activist campaign called the Mattress Project.  169 F. Supp. 3d at 360–61.  The campaign involved a student "carrying her mattress around Columbia's campus" with the public goal of "[g]et[ting] my rapist [(the *Nungesser* plaintiff)] off campus." *Id*.; *see also 'My Rapist Is Still on Campus,'* Time, May 15, 2014, https://time.com/99780/campus-sexual-assault-emma-sulkowicz/ [https://perma.cc/P7VS-DE4C] (last visited September 23, 2024).

The second case, *Roe v. St. John's University*, No. 19-CV-4694, 2021 WL 1224895
(E.D.N.Y. Mar. 31, 2021), *aff'd*, 91 F.4th 643 (2d Cir. 2024), involved a similar Title IX claim
by a student accused via Twitter of rape, *see id*. at *7, *16.  Applying *Nungesser*, the court held
that the Tweet "was not [harassment] 'on the basis of sex' because it was based on [the
p]laintiff's alleged past conduct, not his gender."  *Id*. at *20.  And the Court is aware of at least
two other cases applying that same logic in a challenge to a university's Title IX adjudication.
*See Doe*, 299 F. Supp. 3d at 952 (dismissing Title IX challenge to suspension of student accused
of sexually assaulting a fellow student); *Doe v. Univ. of Mass.-Amherst*, No. 14-CV-30143, 2015
WL 4306521, at *8 (D. Mass. July 14, 2015) (dismissing Title IX challenge to school
adjudication because "[the p]laintiff ha[d] not cited examples of any comments that targeted him
based on his gender—as opposed to his status as a student accused of sexual assault—or any
conduct suggestive of gender bias").

The undisputed facts demonstrate that Plaintiff's perceived harassment was not based on
gender here, either.  Start with Plaintiff's testimony.  When asked why he felt discriminated
against, Plaintiff pointed to the allegations lodged against him, not to anti-male bias:  Plaintiff
stated he felt "shunned . . . as a result of the fact that everyone knew about th[e] allegation and
about me having gotten sanctioned."  (Pl's Dep. at 66:7–13.)  And asked what he thought the
students "were discriminating against [him] for," Plaintiff responded that it was "[f]or the
slanderous accusations made against me."  (*Id*. at 66:20–25.)  That explanation appears
consistently throughout Plaintiff's testimony and is the only answer he provides to those and
other similar questions.  (*See id*. at 51:2–4 (stating Plaintiff felt singled out because "everybody
knew about my business"); *id*. at 73:6–9 ("They were judging me based off of this thing they
heard through the grapevine and holding me accountable even though I am not guilty."); *id*. at

168:8–11 (stating Plaintiff withdrew because of his "participation in Title IX, as well as the confidentiality of my personal business being broached").) Those allegations, to be sure, are weighty, and Plaintiff may have viewed the accusation of rape on social media as outright hostile. But they are all statements based on Plaintiff's alleged *conduct*, not his protected characteristics. *See Roe*, 2021 WL 1224895, at *20 (noting that a social media posting "was not [harassment] 'on the basis of sex,' because it was based on Plaintiff's alleged past conduct, not his gender"); *Doe*, 299 F. Supp. 3d at 952 (noting that "calling someone a rapist is not 'inherently gendered'" (quoting *Nungesser*, 169 F. Supp. 3d at 365)).

Plaintiff also did not testify to any circumstantial evidence of sex discrimination. No one called Plaintiff "sex-specific [or] derogatory terms." *See Adams v. City of New York*, 837 F. Supp. 2d 108, 125 (E.D.N.Y. 2011) (considering indicia of sex discrimination) (citation omitted); *see also Doe*, 299 F. Supp. 3d at 952 (holding that accusations that the plaintiff-student was a "predator," and "rapist" were "not gender-based harassment"). (*See* Pl's Dep. at 33:14–17 (stating Plaintiff did not recall anyone in class or on campus calling him names); Pl's 56.1 ¶ 12 (same).) He "never felt physically threatened" on account of his sex. (*See* Pl's Dep. at 42:7–8; Pl's 56.1 ¶ 13.)[5] Nor is there evidence of "disparate treatment based on gender"—i.e., that other male students were shunned or that a similarly situated female student was *not* shunned. *See Annabi v. N.Y. Univ.*, No. 22-CV-3795, 2023 WL 6393422, at *20 (S.D.N.Y. Sept. 29, 2023). The record does contain ample evidence of "personal animus," but that alone, "without evidence of discriminatory bias on the basis of a protected characteristic," is insufficient to maintain a

---

[5] When Plaintiff referred to feeling "threatened," he clarified that "what I feel threatened of is my education." (*See* Pl's Dep. at 78:11–12; *see also id*. at 79:4–6 (same).) He did not testify about threats to his person on account of his sex.

hostile environment claim. *See Kocar v. Port Auth. of N.Y & N.J*, No. 19-CV-11508, 2022 WL 624070, at *9 (S.D.N.Y. Mar. 2, 2022).

The only conceivable theory of sex discrimination in this case—that Plaintiff's peers treated men accused of sexual assault worse than women accused of sexual assault—is one Plaintiff does not fully raise. (*See* Pl's Mem. 9–10.) But even if he did, it would lack merit on this record. There is no comparative, or even anecdotal, evidence of that disparity in this case. And the argument is logically wanting. Although sex-based discrimination may encompass "traits or actions" inseparable from one's sex, *see Bostock v. Clayton County*, 590 U.S. 644, 660 (2020), sexual assault is not exclusively perpetrated by men, *see Torres v. Pisano*, 116 F.3d 625, 634 n.8 (2d Cir. 1997) ("We use the male pronoun since the context of this case, and most harassment cases, is that of a male supervisor and a female victim. We do not doubt that in other contexts, the genders can be different."); *see also Nungesser*, 169 F. Supp. 3d at 365 n.8 (citing empirical evidence that 46% of male sexual assault victims report female perpetrators). Absent evidence of some particular concern with punishing men, Plaintiff's claims "at best reflect a bias against people accused of sexual harassment"; they do not, alone, "indicate [anything] about gender discrimination." *Nungesser*, 169 F. Supp. 3d at 365 n.8 (first alteration adopted) (quoting *Haley v. Va. Commonwealth Univ.*, 948 F. Supp. 573, 579 (E.D. Va. 1996)).[6]

---

[6] The Second Circuit has recognized that a university could *plausibly* be biased towards "accept[ing] [a] female's accusation of sexual assault and reject[ing] [a] male's claim of consent" on account of "having been severely criticized in the student body and in the public press for toleration of sexual assault of female students[.]" *Doe v. Columbia Univ.*, 831 F.3d 46, 57–58 (2d Cir. 2016). But there are important caveats to that holding. *Doe* explained that the choice "to accept an unsupported accusatory version [of events] over [the p]laintiff's," supported an inference of bias, but not necessarily one "on account of sex." *Id.* at 57. It was only the "ample" allegations that the relevant administrators were sensitive to the school's perceived failure to protect female students that pushed those allegations over the line. *See id.* And because the case went up on a motion to dismiss, the Second Circuit did not consider the "accuracy" of this theory empirically. *Id.* at 59.

18

Plaintiff does not meaningfully argue that his fellow students engaged in gender-based harassment.  He instead claims that SUNY Purchase discriminated against him in the 2017 Adjudication and that the Adjudication fomented a hostile environment upon his return to campus in 2018.  (*See* Pl's Mem. 9–10.)  But there are two significant flaws in that approach.  First, the Adjudication cannot serve as evidence of discrimination because the Court dismissed all allegations about it as time barred.  *Doe*, 617 F. Supp. 3d at 209–10.  In doing so, the Court clearly distinguished "acts pertaining to the [A]djudication" and "acts pertaining to Plaintiff's return to campus," holding that the latter are actionable, and the former are not.  *Id.*  Plaintiff's attempt to resurrect that claim by arguing that he "continue[d] to feel the effects" of time-barred discriminatory acts is effectively an end-run around the Court's Opinion and would "render meaningless the time limitations imposed on discrimination actions."  *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907–08 (2d Cir. 1997), *abrogated on other grounds sub nom Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also Freud v. N.Y. City Dep't of Educ.*, No. 22-879, 2023 WL 3103588, at *1 (2d Cir. Apr. 27, 2023) (summary order) (same).  Second, SUNY Purchase's alleged discrimination during the Adjudication is irrelevant to the issue here—whether *students* were hostile to Plaintiff because of his sex.  Plaintiff's classmates—with the exception of Roe—were not involved in the Adjudication.  *See Doe*, 617 F. Supp. 3d at 210.  And nothing about the Adjudication's result suggested that students should be hostile because Plaintiff is a man.  Instead, Plaintiff's continued focus on the Adjudication

---

Plaintiff does not claim—or present evidence—that his peers had a similar motivation in shunning him.  Put differently, while his peers may have been biased against individuals accused of sexual assault, nothing indicates that they had a particular concern with shunning men accused of sexual assault along the lines of the Second Circuit's holding in *Doe*.  Plaintiff does suggest that SUNY Purchase was being pressured to better protect female students at the time of the Adjudication, (*see* Pl's Mem. 10–11), but all claims regarding the Adjudication have been dismissed from this Action.  *See Doe*, 617 F. Supp. 3d at 209–10.

reinforces a non-discriminatory explanation for his claims: that any hostility is based on the conduct discussed in the Adjudication, not his sex. *See Doe*, 299 F. Supp. 3d at 952 ("Doe's allegations clearly suggest that Roe's friends' harassing actions—punching him in the face, giving him the middle finger, texting his girlfriend—were motivated by their belief that Doe sexually assaulted their friend. . . . All of these allegations suggest that Roe and her friends[] . . . had personal animus toward[] Doe individually.").

### b. Severity

SUNY Purchase also argues that, even assuming Plaintiff was discriminated against, any harassment was not sufficiently severe, pervasive, or offensive for liability to attach. (*See* Def's Mem. 12–14.)

Relevant caselaw focuses both on the degree of harassment and its effect. Regarding the former, the discriminatory conduct must be both objectively and subjectively severe in that "a reasonable person would find," and Plaintiff actually perceived, the environment to be "hostile or abusive." *Pratt v. Brennan*, No. 18-CV-4799, 2020 WL 364195, at *4 (S.D.N.Y. Jan. 22, 2020) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)). At minimum, the "incidents of harassment must be more than episodic to justify a hostile environment claim; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Roe*, 91 F.4th at 662 (alterations adopted) (quoting *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)). Courts thus consider "the frequency of the discriminatory conduct; its severity; [and] whether it is physically threatening or humiliating, or a mere offensive utterance." *Osinoff v. Nuvance Health*, No. 22-CV-2017, 2024 WL 967190, at *15 (S.D.N.Y. Mar. 5, 2024) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Title IX cases also examine the effect of alleged harassment. In any circumstance, the key inquiry is whether the peer harassment has "the systemic effect of denying the victim equal

access to an educational program or activity." *AA by BB v. Hammondsport Cent. Sch. Dist.*, 527

F. Supp. 3d 501, 511 (W.D.N.Y. 2021) (quoting *Davis*, 526 U.S. at 652–53). "The most obvious

example of student-on-student sexual harassment capable of triggering a [] claim" involves "the

overt, physical deprivation of access to school resources." *See Davis*, 526 U.S. at 650. Short of

physical exclusion, courts look for other "concrete, negative effect[s]" like "a drop in grades,

missing school, being forced to transfer schools, or mental health issues requiring therapy or

medication." *Nungesser v. Columbia Univ. (Nungesser II)*, 244 F. Supp. 3d 345, 367–68

(S.D.N.Y. 2017) (quoting *Davis*, 526 U.S. at 654); *see also Gordon v. Niagara Wheatfield Cent.*

*Sch. Dist.*, No. 22-CV-00172, 2023 WL 6520216, at *9 (W.D.N.Y. Aug. 22, 2023) (same),

*report and recommendation adopted*, 2023 WL 6227616 (W.D.N.Y. Sept. 26, 2023); *cf. Davis*,

526 U.S. at 652 (finding numerous allegations of offensive touching, which resulted in a drop in

grades and the student writing a suicide note, sufficient to state a claim).

Plaintiff's evidence largely consists of statements that he felt "ostracized" and "shunned"

on account of the accusations against him. (*See, e.g.*, Pl's Dep. at 66:9–13, 74:5–11.) Plaintiff

recounts situations like students "glaring" at him when he entered a room, (*id.* at 32:2–6),

speaking to him in a "dismissive" or "short" manner, and Plaintiff's general feeling that he was

"alone in a room full of people," (*id*. at 33:2–4). Beyond that, he cites two specific instances of

offensive peer conduct. The first involves a fellow student's Snapchat, which included a photo

of Plaintiff's dating profile and purportedly stated, "this dude raped a girl freshman year & the

school only suspended him." (*See* Dewese Decl., Ex. A.) And the second involved another

student in Plaintiff's cohort refusing to work with him in class. (*See* Def's 56.1 ¶ 18; Pl's 56.1

¶ 18.)

These facts do not suggest that Plaintiff's time back "at [SUNY Purchase] was pleasant or easy"—and it may well have been extremely uncomfortable and isolating.  *See Nungesser*, 169 F. Supp. 3d at 368.  But Title IX "sets a high bar" for what constitutes a "hostile environment, *see id.*, and these facts do not meet it.

The circumstances—none of which are disputed—are simply not severe enough.  As a general matter, Title IX is not "a 'general civility code'" for members of the SUNY Purchase student body.  *Jennings v. Univ. of N.C.*, 482 F.3d 686, 696 (4th Cir. 2007) (quoting *Oncale*, 523 U.S. at 80).  It is designed to prevent "student-on-student sexual harassment," *Davis*, 526 U.S. at 646–47, not to remedy "coarse" or even "boorish" behavior, *see Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 747 (2d Cir. 2003) (citation omitted).  To the extent Plaintiff's cohort's treatment of him could be called "boorish," it bears little resemblance to offensive, targeted behavior that normally gives rise to liability, like a professor's repeated use of demeaning sexual innuendo towards a student in front of an entire class, *see id.* at 747, or a ruthless bullying campaign based on a student's sexuality, *see Cianciotto on behalf of D.S. v. N.Y.C. Dep't of Educ.*, 600 F. Supp. 3d 434, 455 (S.D.N.Y. 2022).  Plaintiff's attempt to frame his treatment as similarly "vicious and brutal," citing Shingelo's testimony, mischaracterizes the record.  (*See* Pl's Mem. 8 (quoting Fabi Decl., Ex. 2 ("Shingelo Dep.") at 79:23–24 (Dkt. No. 84-2)).)  In that portion of her deposition, Shingelo discusses concerns she had about Plaintiff's return to campus because "students *could* be vicious and brutal," and she does state that their behavior actually *did* fit those adjectives.  (*See* Shingelo Dep. at 79:23–24 (emphasis added).)  And the record does not even enable an inference of such behavior here given the lack of any sexually-charged language or conduct.  Indeed, courts have consistently held that evidence of "nasty," "dismissive," or even persistently "rude" peers falls short of what Title IX requires.  *See Krasner v. HSH Nordbank*

*AG*, 680 F. Supp. 2d 502, 513 (S.D.N.Y. 2010) (explaining an "unpleasant" or "nasty" environment is not necessarily a "hostile" one); *see also Mills v. S. Conn. State Univ.*, 519 F. App'x 73, 75 (2d Cir. 2013) (summary order) (affirming summary judgment because the facts that the plaintiff was subjected to "dismissive and physically intimidating behavior" and "was shunned" did not constitute a hostile environment); *Brodsky ex rel. S.B. v. Trumbull Bd. of Educ.*, No. 06-CV-1947, 2009 WL 230708, at *6 (D. Conn. Jan. 30, 2009) (granting summary judgment to the defendant-school despite evidence that the plaintiff-student faced "numerous instances of rude and unkind treatment by various peers").

Although Plaintiff goes on to cite instances of targeted peer-to-peer conduct, those situations were isolated and sporadic. Plaintiff could only recall one student who refused to work with him. (Pl's Dep. at 36:17–19 (stating this student was "the only one to outright refuse to work with [him]").) And he points to one Snapchat labeling him a "rapist." (*See* Dewese Decl., Ex. A.) Those instances, even in the context of an unpleasant environment, do not constitute type of "systemic" harassment giving rise to Title IX liability. *See Roe*, 91 F.4th at 650, 661–622 (finding a "broadly disseminated" Tweet "accusing [the plaintiff] of sexual assault," was not sufficiently severe, even where the plaintiff received threatening phone calls and texts about the Tweet shortly after it was published); *see also Nungesser II*, 244 F. Supp. 3d at 369 (holding two instances where classmates stared at the plaintiff, took pictures of him, and made him "fearful to participate in class discussion," did not constitute "pervasive interference").

Plaintiff's response again attempts to resurrect dismissed claims. Instead of explaining why peer *harassment* was objectively severe, Plaintiff argues that SUNY Purchase's "draconian sanctions" are what "altered the conditions of Plaintiff[']s educational environment." (Pl's Mem. 12.) There is some evidence that the sanctions, particularly preventing Plaintiff from accessing

residence facilities, could hinder his ability to collaborate with fellow students. (*See* Gideon

Dep. at 81:16–82:7, 87:20–88:20).) And such evidence can support a distinct theory of Title IX

liability. *See, e.g., Xiaolu Peter Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 461–62, 485 (S.D.N.Y.

2015) (noting plaintiffs may allege that "gender bias was a motivating factor behind an either

erroneous outcome or unduly severe penalty"). But Plaintiff's claims regarding those

sanctions—including that SUNY Purchase imposed an "unjust severe penalty," (Compl.

¶ 147)—were dismissed as time barred. *See Doe*, 617 F. Supp. 3d at 209–10 (barring "Plaintiff's

Title IX claims pertaining to the [A]djudication," which encompassed the "f[inding] that Plaintiff

violated C.8 and [the] impos[ition of] sanctions"). Plaintiff may not convert a claim about the

continuing effect of those sanctions into a claim that he was harassed by his fellow students. *See*

*Lightfoot*, 110 F.3d at 907–08. And he offers no independent evidence about why his peers'

general dismissiveness, the Snapchat, or a single student's refusal to work with him, had a

"concrete, negative effect" on his ability to access school resources. *See Nungesser II*, 244 F.

Supp. 3d at 367–68 (quotation marks omitted).

Accordingly, because Plaintiff did not suffer harassment "on the basis of sex," and

because any harassment he did suffer was not objectively severe, the Court grants summary

judgment to SUNY Purchase on Plaintiff's hostile environment claim.[7]

### 2. Retaliation

SUNY Purchase also seeks summary judgment on Plaintiff's Title IX retaliation claim.

(Def's Mem. 16–23.)

Although Title IX contains no retaliation provision, the Supreme Court has held that

"when a funding recipient retaliates against a person because he complains of sex discrimination,

---

[7] SUNY Purchase's additional argument that it did not act with deliberate indifference to
any harassment, (*see* Def's Mem. 14–16), is hardly frivolous but need not be considered here.

24

th[at] constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX."

*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005).  "As in the context of Title VII,

a plaintiff claiming retaliation under Title IX must first establish a prima facie case by showing:

(1) protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity;

(3) adverse school-related action; and (4) a causal connection between the protected activity and

the adverse action."  *Doe v. Yeshiva Univ.*,703 F. Supp. 3d 473, 495 (S.D.N.Y. 2023) (quoting

*Papelino*, 633 F.3d at 91); *accord Bergesen v. Manhattanville Coll.*, No. 20-CV-3689, 2021 WL

3115170, at *7 (S.D.N.Y. July 20, 2021).

      With respect to the first element, "protected activity" is defined as "an 'action taken to

protest or oppose statutorily prohibited discrimination.'"  *Abdelsayed v. NYC Dep't of Educ.*,

No. 16-CV-1775, 2019 WL 13271813, at *11 (E.D.N.Y. Mar. 12, 2019) (quoting *Cruz v. Coach

Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000), *superseded on other grounds by* N.Y.C. Local L.

No. 85); *see also Castro v. Yale Univ.*, 518 F. Supp. 3d 593, 611 (D. Conn. 2021) (explaining

"protected activity" includes "includes a wide range of activities, like reporting discrimination,

testifying in a proceeding, or otherwise participating in an investigation about discrimination").

The plaintiff-complainant must have "a good faith, reasonable belief that the underlying

challenged actions of the [defendant] violated the law," even if the conduct "was not in fact

unlawful."  *Sutton v. Stony Brook Univ.*, No. 18-CV-7434, 2020 WL 6532937, at *9 (E.D.N.Y.

Nov. 5, 2020) (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)).  "A

plaintiff's belief on this point is not reasonable simply because he or she complains of something

that appears to be discrimination in some form," rather, the complaint must cite discrimination

on the basis of sex.  *Johnson v. City Univ. of N.Y.*, 48 F. Supp. 3d 572, 576 (S.D.N.Y. 2014)

(quoting *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 15 (2d

Cir. 2013)); *see also Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 136 (2d Cir. 1999)

(concluding there was no reasonable belief of a Title VII violation where "the evidence [did] not

address racial discrimination").

Once a plaintiff establishes a prima facie case, the familiar *McDonnell Douglas*

framework applies: "the burden shifts to the defendant to articulate a legitimate,

nondiscriminatory reason for its actions" and then back to the plaintiff "to demonstrate that the

articulated reasons are pretextual." *Papelino*, 633 F.3d at 91 (citing *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792, 802, 804–05 (1973)).

SUNY Purchase contends, among other things, that Plaintiff fails to make out a prima

facie case that he engaged in "protected conduct." To set the stage, Plaintiff's theory of

retaliation dovetails with his hostile environment claim.[8] He argues that he brought purported

discrimination to the school's attention in 2017 and 2018, and that SUNY Purchase retaliated by

allowing students to "coalesce[] around a plan to ostracize" him and allowing that behavior to

continue "unabated" upon his return. (*See* Pl's Mem. 18.)

Plaintiff points to two categories of protected acts: (1) his November Article 78 petition

challenging the result of the Adjudication, (Pl's Mem. 17–18); and (2) complaints about

---

[8] SUNY Purchase argues that Plaintiff's Title IX claims rise and fall together. (Def's
Mem. 16–17.) It relies on cases holding that the *retaliatory* hostile environment must meet the
same severity standard applicable to conventional hostile environment claims—i.e., that it
"altered the conditions of [the educational environment]." *See, e.g.*, *Cajamarca v. Regal Ent.
Grp.*, 863 F. Supp. 2d 237, 254 (E.D.N.Y. 2012). But the Second Circuit squarely rejected that
position in *Carr v. New York City Transit Authority*, 76 F.4th 172 (2d Cir. 2023). There, it held
in the Title VII context that

> [e]ven if a plaintiff labels her retaliation claim as a 'retaliatory hostile work
> environment' claim, courts should not consider whether the allegedly retaliatory
> actions meet the higher 'severe and pervasive' standard. All that is relevant is
> whether the actions, taken in the aggregate, are materially adverse and would
> dissuade a reasonable employee from making a complaint of discrimination.

*Id.* at 181.

"discriminatory conduct" in the fall of 2018, (*see id*. at 15–16). But neither one can reasonably be said to protest prohibited discrimination "on the basis of sex." *See* 20 U.S.C. § 1681(a). To start, Plaintiff's Article 78 Petition has nothing to do with discrimination. The Petition, by its terms, challenges the Adjudication on "due process grounds" as "arbitrary and capricious" and "not supported by substantial evidence" and on grounds that SUNY Purchase failed to follow its own disciplinary procedures. (*See generally* Article 78 Petition; *id*. ¶ 1.) Plaintiff never raised allegations of discrimination in the Petition, not to mention sex-based discrimination. Nor did he argue that the proceedings created an *inference* of discrimination, like his suggestion in this case that SUNY Purchase imposed a more severe sanction because he was a man accused of sexual assault. (*See* Pl's Mem. 9–10 (quoting *Menaker*, 935 F.3d at 32 ("[U]niversities' reactions to accusations of sexual misconduct are often influenced by the sexes of the parties."))). Put differently, while Plaintiff claimed he was denied due process, he did not make that claim on the basis of illegal bias. In his response, Plaintiff appears to agree with that characterization and, at least, raises no cogent argument to the contrary. (*See id*. at 17–18.) As to the Petition, there is thus "no indication [] that [Plaintiff] [him]self possessed a good-faith belief that [he] was complaining of conduct prohibited by [Title IX] or that [SUNY Purchase] could have understood [his] complaints in this way." *Kelly*, 716 F.3d at 16.

Plaintiff's, and his father's, complaints to SUNY Purchase ultimately suffer from the same flaw. The relevant communications consist of:

- An August 27, 2018, email from Plaintiff's father to Jennifer Shingelo explaining that "information [about the allegations] has been shared" and raising concerns that Plaintiff's peers would have "an initial bias based on information detailing one side of the story." (Shingelo Decl., Ex. A at 1);

- A September 12, 2018, email from Plaintiff to Jerima Dewese—and a subsequent in-person meeting—where Plaintiff made a Title IX complaint about the Snapchat calling Plaintiff a "rapist." (Dewese Decl., Ex. A; *see also* Dewese Decl. ¶ 8);

27

- A September 24, 2018, email from Plaintiff's father describing "the retaliatory behavior of [Plaintiff's] current company" which consisted of "treat[ing] [Plaintiff] like he is invisible" and one student "outright refus[ing] to work with him." (Shingelo Decl., Ex. B at 2); and

- Conversations between Plaintiff, Shingelo, David Gideon, and Akil Davis, where Plaintiff discussed feeling isolated in general, and on account of the student's refusal to work with him. (*See* Pl's Dep. at 66–68.)

Even assuming Plaintiff can leverage his father's emails as his own protected acts, no one would view these communications as complaints of sex discrimination.[9] First off, Plaintiff does not assert a subjective belief that he complained of such discrimination in his papers. (*See generally* Pl's Mem.) And to the extent that belief can be implied based on statements to Shingelo and Gideon that Plaintiff felt discriminated against "[i]n some form or way," (Pl's Dep. at 69:22–25), caselaw requires Plaintiff go beyond "discrimination in some form" and articulate why the discrimination targeted his protected traits, *see Kelly*, 716 F.3d at 15. Yet the record is simply devoid of evidence that Plaintiff felt discriminated against because he is a man. Plaintiff's

---

[9] Defendant argues, albeit in a footnote, that Plaintiff's father's emails do not constitute protected activity. (Def's Mem. 18 n.8.) Relevant caselaw refers to "protected activity *by the plaintiff*," *Papelino*, 633 F.3d at 91 (emphasis added), or "the *plaintiff's* protected action," *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010) (emphasis added). (*See also* Def's Mem. 18 n.8.) Although the Second Circuit has not addressed whether a "third-party's engagement in protected activity may constitute protected activity by a plaintiff," courts in the Second Circuit, and multiple courts of appeals, have held such conduct is not actionable in the context of Title VII. *Zuk v. Onondaga County*, No. 07-CV-732, 2010 WL 3909524, at *18 & n.54 (N.D.N.Y. 2010) (citing *Genao v. N.Y.C. Dep't of Parks & Recreation*, No. 04-CV-2893, 2005 WL 1220899, at *5–6 (E.D.N.Y. May 23, 2005) (collecting cases)); *see also Ulrich v. Soft Drink, Brewery Workers & Delivery Emps., Indus. Emps., Warehousemen, Helpers & Miscellaneous Workers, Greater N.Y. & Vicinity, Loc. Union No. 812*, 425 F. Supp. 3d 234, 245 (S.D.N.Y. 2019) (noting that the Third, Fifth, Sixth, and Eighth Circuits have rejected such claims). The Court, however, is aware of one case suggesting that a plaintiff could recover for retaliation based on a claim by a "sister" or another close relative. *See Gonzalez v. N.Y. State Dep't of Corr. Servs. Fishkill Corr. Facility*, 122 F. Supp. 2d 335, 346–47 (N.D.N.Y. 2000) (citation omitted) (holding that the plaintiff had "standing to assert a Title VII retaliation claim" where she alleged to have suffered adverse employment action because her husband, a coworker, alleged "complaints of discrimination"). While the Court notes the weight of authority on this question, it need not address it further, as none of the complaints raised instances of discrimination on the basis of sex.

complaint about the Snapchat fares no better, as neither it, nor Plaintiff's testimony about it, make mention of anything besides his alleged conduct.

Even if Plaintiff believed he was subject to illegal discrimination, nothing in his complaints "would have allowed [SUNY Purchase] to 'reasonably have understood that [his] opposition was directed at conduct prohibited by Title [IX].'" *Kelly*, 716 F.3d at 17 (alterations adopted) (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)). Plaintiff's reference to "discrimination," absent sex-based circumstances, "is, by itself, insufficient to place [a defendant] on notice of a protected complaint." *See Moore v. City of New York*, No. 16-CV-7358, 2018 WL 1281809, at *5 (S.D.N.Y. Mar. 8, 2018) (citation omitted); *see also Aspilaire*, 612 F. Supp. 2d at 308–09 ("The onus is on the speaker to clarify . . . that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally."). And, as explained above, the substance of the complaints, and the relevant context, overwhelmingly indicate that Plaintiff's peers' behavior targeted his alleged conduct, not his sex.

Taken together then, Plaintiff has not demonstrated a genuine fact dispute that he engaged in protected activity. *See Wimmer*, 176 F.3d at 136 (holding individual "could not have reasonably believed" that he was opposing unlawful acts where "the evidence d[id] not address racial discrimination in an employment practice"); *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 594 (2d Cir. 1988) (holding plaintiff failed to establish protected conduct where his objections "neither pointed out discrimination against particular individuals nor discriminatory practices by Columbia" on the basis of protected traits); *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 102–03 (S.D.N.Y. 2023) (holding emails complaining of "general aggression" did not constitute "protected activity" because they

did not raise discrimination based on protected traits); *Johnson*, 48 F. Supp. 3d at 577 ("[I]t is objectively unreasonable to believe that complaining about poor treatment . . . entirely unrelated to any trait, protected or otherwise, is a 'protected activity' under Title [IX]."); *Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012) ("[C]omplaints centered on general allegations of harassment unrelated to race [or any other protected class] are not protected activity . . . ." (first alteration in original) (citation omitted)).[10]

### III.  Conclusion

For the aforementioned reasons, Defendant's Motion is granted.  The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 77), enter judgment for Defendant, and close the case.

SO ORDERED.

Dated:    September 23, 2024
          White Plains, New York

_____
          KENNETH M. KARAS
          United States District Judge

---

[10] The Court finds compelling, but need not address, Defendant's arguments about other elements of Plaintiff's Title IX retaliation claim, (Def's Mem. 19–22), or its argument that emotional and psychological damages are barred by Supreme Court precedent, (*id*. at 23–25).